## JOHNSON *et al. v.* THE STATE.

1. In the absence of special title by grant, lease, prescription, or otherwise, the boundary of a landowner abutting on the ocean, or on any estuary, bay, inlet, or arm thereof where the tide regularly ebbs and flows, extends only to ordinary high-water mark. Sections 3059 and 3060 of the Civil Code are not applicable to such waters.
2. An indictment, under section 588 of the Penal Code, for removing oysters from a private oyster-bed, is not supported by proof showing that the accused persons took oysters from a bed situated between high-water mark and low-water mark upon the shore of an inlet of the sea, title to the bed not being shown to exist in any private person.

Argued December 16, 1901. — Decided February 3, 1902.

Motion for rehearing overruled February 28, 1902.

Indictment for misdemeanor. Before Judge Bennet. Camden superior court. October 26, 1901.

*A. L. Franklin* and *D. W. Krauss,* for plaintiffs in error. *J. W. Bennett,* solicitor-general, and *Atkinson & Dunwody,* contra.

LEWIS, J. Johnson and Grice were indicted, under section 588 of the Penal Code, by the grand jury of Camden county, for taking oysters from a private oyster-bed without the consent of the owner of the bed. The jury returned a verdict of guilty; whereupon they made a motion for a new trial, which was overruled, and they excepted. It was admitted that the accused persons took a quantity of oysters from an oyster-bed located in King's Bay, in Camden county; and it was shown by uncontradicted evidence that King's Bay is salt water and is an arm of the sea or the Atlantic Ocean, and that the tide ebbs and flows there. It was also admitted that the bed from which the oysters were taken was located between high-water and low-water mark at a point on the shore of King's Bay immediately bounding the land owned by the prosecutor. It appears from the deed to this land, which was offered in evidence, that the eastern boundary of the property was stated generally to be "West Shore River, or King's Bay." The court charged the jury as follows: "If you find from the evidence that the description given in the deeds of the lands conveyed thereby that one of the boundary lines of the lands thus conveyed is King's Bay, the land conveyed would extend to low-water mark of the bed of the stream, and any oyster-bed located within those boundaries would belong

to and be the private bed of the owner of the land." This charge is assigned as error, and, in view of our decision upon that question, we deem it unnecessary to consider any other phase of the case; for if that charge was erroneous, the accused persons were, under the admitted facts, guilty of no offense against the laws of this State, and should have been acquitted.

At common law, in the absence of any special title by grant or prescription, the boundary of landowners abutting on the sea, or upon any estuary, tidal stream, or arm of the sea where there was a regular rise and fall of the tide, extended only to high-water mark. The soil between high-water mark and low-water mark was the property of the crown. This rule, so far as the boundary of the abutting landowner is concerned, has been almost universally followed in the United States. See 4 Am. & Eng. Enc. L. (2d ed.) 818 – 820, and cases cited ; Tyler, Boundaries, 31 et seq. There seems to be no Georgia case in which the precise question here made has been adjudicated, but it is claimed by counsel for the State that the common-law rule has been modified by our statutory law as embodied in the Civil Code, §§ 3059, 3060, the former of which defines a navigable stream to be one capable of bearing upon its bosom, either for the whole or part of the year, boats loaded with freight in regular course of trade, and the latter declaring that the rights of the owner of lands adjacent to navigable streams extend to low-water mark in the bed of the stream. It is conceded that unless these code sections are applicable to such a body of water as King's Bay is in the present case admitted to be, the common-law rule before set out prevails at present in Georgia. It is claimed by counsel for the State that under the Civil Code, § 3059, the sole test to be applied in determining whether or not a stream is navigable is its capacity to bear upon its bosom boats loaded with freight, and that the question whether or not the tide ebbs and flows in any part of the stream should not be considered. But granting that such is the case, it is then pertinent to inquire if a bay, estuary, or arm of the sea can, under this law, properly be termed a stream. It must be borne in mind that the statute in question, as construed by the State's counsel, would be in derogation of the common-law, and therefore demands a strict construction. A stream is defined by Bouvier as a current of water; a body of water having a continuous flow in one direction. 2 Bouv. L. Dict. 1049. "A current of water; a body of flowing water."

Black L. Dict. 1127.    Certainly, in its ordinary signification, the word "stream" would seem to imply a body of running water; a continuous current.    If such be the case, it will hardly be contended that an estuary, or inlet of the ocean, is such a stream as is contemplated by the code section under consideration.    Every Georgia case to which our attention has been called, in which this section of the code has been construed, has had to do either with a current or stream of water as contemplated by the foregoing definitions, or else, as in the case of *Boardman* v. *Scott,* 102 *Ga.* 404, with an inland fresh-water lake or pond.    It is true that in the case of *Charleston Ry.* v. *Johnson,* 73 *Ga.* 306, the body of water which was declared to be a navigable stream was one in which the tide rose and fell three and a half feet, but it is also to be noted that it was a "watercourse running into the Savannah river," which brings it well within the definitions referred to; and it is further to be noted that that decision had only to do with the question of whether or not an obstruction across the stream might be abated as a nuisance, and did not consider in any of its phases the law with reference to boundaries.    From all the light before us, we think it most reasonable to suppose that the intention of the lawmaking power, as expressed in sections 3059 and 3060 of the Civil Code, was, not to change the common law with reference to the boundaries of landowners abutting on the sea or any of its inlets, but rather to insure to riparian proprietors the right to the river-bottoms upon their lands for agricultural purposes.

Nothing here laid down can properly be construed to affect any vested rights of owners of private oyster-beds in this State.    It is not intended to announce any new rule of law, but simply to declare what has always been the law of this State.    This decision can not have the effect of altering in the slightest degree the existing title to any private oyster-bed in Georgia.

Our conclusion is that, under the admitted facts of this case, the oyster-beds, for disturbing which the accused persons were indicted, were public property, and consequently there was shown no violation of section 588 of the Penal Code; that the court below erred in charging the jury that the deeds in evidence conveyed title to the soil to low-water mark in King's Bay; and that the verdict of guilty returned by the jury was illegal and should have been set aside.    *Judgment reversed.    All the Justices concurring.*