766.   SEABOARD AIR-LINE RAILWAY *v.* SIKES *et al.*

1. "A navigable stream is one capable of bearing upon its bosom, either for the whole or a part of the year, boats loaded with freight in the regular course of trade. The mere rafting of timber, or transporting wood in small boats, does not make a stream navigable." Applying this definition to the evidence, the Canoochee river in this State is not a navigable stream.

2. The right of the public to use watercourses as highways is restricted, in this State, to such as are navigable.

3. The owner of land is entitled to the free and exclusive enjoyment of all watercourses not navigable flowing over his land; but this right may become subject to a public servitude by acquiescence and use sufficient to show a prescription.

4. A right acquired by the public to use a watercourse not navigable may be lost by a discontinuance of such use for a time sufficient to justify an inference of abandonment.

5. A corporation is not bound by a declaration of an agent made outside the scope of his agency.

6. The trial court should not undertake to state specifically the contentions of one party, without, in like manner, stating the corresponding contentions of the other party.

Action for damages, from city court of Reidsville—Judge Morgan. August 31, 1907.

Argued December 17, 1907.—Decided March 16, 1908.

*Eason & Bull, Kelley & Smith,* for plaintiff in error.

*Robert E. DeLoach, W. T. Burkhalter,* contra.

HILL, C. J.   Sikes and others brought suit against the Seaboard Air-Line Railway to recover damages resulting to them from the erection of a bridge across the Canoochee river. They allege that the Canoochee river is a navigable stream which the public has the right to use as a highway, and that the river has been in fact used by the public for the purpose of drifting and floating lumber, timber, and logs to market so long that "the memory of man runneth not to the contrary;" and they assert that the public has therefore acquired a right by prescription to such use of the river. The Seaboard Air-Line Railway erected a bridge across the river, which it is asserted prevents the enjoyment of this right, by obstructing the passage of rafts, the arches supporting the bridge over the river being too narrow to permit rafts to pass between them. They base their claim for damages in the present suit on the following facts:   They had information that the railway, in erecting the bridge over the river, had constructed it so as not to

interfere with the use of the river as a commercial highway for floating rafts of lumber and logs. Relying upon this information they prepared a raft of logs containing 700 pieces of stick timber; placed this raft in the river some ten miles above the bridge in question, and floated it down to the bridge, when it was discovered that the raft could not pass between the arches, and they were compelled to go to heavy expense in taking the raft to pieces in order to get the logs through. The jury found a verdict in favor of the plaintiffs, and the defendant's motion for a new trial was overruled.

The undisputed evidence shows that the Canoochee river is a small, crooked stream, incapable of floating freight or passenger boats, and "only used for rafting timber and fishing." In its ordinary condition it is incapable of floating rafts, and only when the volume of water is increased by rains can it be so used. This use has not been constant or continuous during this period, but sometimes has been discontinued for several years. The owners of the land adjacent to the river have never interrupted or objected to such use. The river, where this bridge crosses, is from 75 to 100 feet wide, and the bridge is located on the right of way of the railway, and the space between the arches supporting the bridge across the river is from sixteen to seventeen feet wide. This general statement of the evidence is sufficient to illustrate the questions of law involved.

1. The controlling question in the case is, what are the rights of the public or of individuals to use watercourses as highways? The right to use watercourses as highways is analogous to the right to use public highways upon the land. This statement applies to those waters that are navigable. From the very earliest times, both in this country and in England, it has been recognized that the citizens have an inherent right to use as highways all navigable rivers; and this right of navigation extends to the entire surface of the water from bank to bank. In determining what is a navigable stream it is unnecessary to consult the text-writers from the De Jure Maris of Lord Hale to Gould on Waters, or the numerous decisions of the courts. Section 3059 of the Civil Code of 1895 gives a clear and explicit definition: "A navigable stream is one capable of bearing upon its bosom, either for the whole or a part of the year, boats loaded with freight in regular course of trade.

The mere rafting of timber, or transporting wood in small boats, does not make a stream navigable." The test by which to determine the navigability of a particular river in this State is found in the navigable capacity measured by the essentials of this definition. Applying this test to the Canoochee river, it is perfectly clear that it is not a navigable stream. It is incapable of bearing upon its bosom at any time any sort of boat loaded with freight or passengers, and is capable of rafting logs or timber only when its waters are swollen by rains. The evidence eliminates from the case, as an issue, the question of its navigability.

2. It has been frequently held that although a river may not be navigable in a strict legal sense, so as to import general public servitude, yet, if in its natural state it is capable of floating to market logs and other products of the forest, the public has an easement in the use of the water for that purpose. In 4 Amer. & Eng. Enc. Law (2d ed.), 709, it is broadly stated that "The general public has an easement of floating logs down any stream which is capable of floating them." A large number of cases are cited in the notes, in support of the text. "The public has a right to float logs on streams which in their natural state are capable of being so used, or on streams capable of floating logs at some seasons every year." 25 Cyc. 1566, notes 7 and 8; 33 Century Digest, title Logs and Logging, § 29; Brooks v. Cedar Brook Co., 82 Me. 17 (19 Atl. 87, 7 L. R. A. 460, 17 Am. St. Rep. 459). In Morgan v. King, 35 N. Y. 459 (91 Am. D. 58), it is declared, that "The true rule is that the public have a right of way in every stream which is capable, in its natural state and its ordinary volume of water, of transporting, in a condition for the market, the product of the forests, upon its banks. It is not essential to the right that the property to be transported should be carried in vessels, provided it can ordinarily be carried safely without such guidance. . . If it is so far navigable or floatable as to be of public use in the transportation of property, the public claim to such use ought to be liberally supported." In this State, under our code, this public right of floatage or raftage exists only in streams that are navigable. The title to streams not navigable is in the owner of the land through which such streams run. And as owner of the stream, he is entitled to the same exclusive possession thereof as he has of any other part of his land. Civil Code, §§ 3061, 3879.

3. Unquestionably non-navigable streams may become subject to public servitude by long use. A right of way through land may be acquired by prescription, and there is no difference in principle in the acquisition of a right of way over the water in streams. Any incorporeal right that can be lawfully granted can be lawfully acquired by use. Civil Code, §§3590, 3591. Bracton says that all incorporeal rights or services may be acquired by acquiescence and use. 4 Bracton, chap. 38, §3. According to the common law, to constitute a prescription, the enjoyment must have existed time out of mind, or, in legal phrase, "during time whereof the memory of man runneth not to the contrary." And, according to Blackstone, "time of memory" commenced from the reign of Richard I. 1 Bl. Com. 75; 2 Id. 263. By the modern rule, the period of use necessary to constitute a prescription has been limited to twenty years. Lord Ellenborough, in Bealy v. Shaw, 6 East, 208, uses this language, "The general rule of law, as applied to this subject, is, that every man has a right to have the advantage of a flow of water in his own land without diminution or alteration, but an adverse right may exist, founded on the occupation of another. I take it, that twenty years exclusive enjoyment of the water, in any particular manner, affords a conclusive presumption of right in the party so enjoying it." The case of Shaw v. Crawford, 10 Johns. (N. Y.) 236, is in point. Battenkill river, although not navigable according to the statute, had been used by the public for rafting for twenty-six years. The court held that such usage had created a public right, and that an action would lie against the owner of a mill-dam for obstructing the river so as to injure a raft in passing over. Under the principle of section 3591 of the Civil Code, we think the owner of a stream not navigable in the strict legal sense can, by his acts of acquiescence, allow the same to be used by the public in floating logs to market for such a length of time as to give a right to such use.

4. The court, in the instant case, charged the jury that "if the right to drift their timber and logs down the stream in question had been enjoyed by the public without interruption or obstruction for over twenty years by the adjacent landowners, then the plaintiffs, in common with the public, would have acquired the right to so use the river, and any infraction of such right by which they were damaged would give them a cause of action." The

court also charged, "If you find that the public has acquired a prescriptive right to the use of the river for the purpose of drifting timber, that right would not become forfeited or lost because the public ceased for the time to use this stream for the purpose of drifting timber, on account of low prices, or for any other reason, unless the public expressly abandoned that right." We think the latter part of this charge is clearly erroneous. This right of user, to ripen into a prescription, must be continuous and uninterrupted; and even where it has been acquired by acquiescence, it can be lost by neglect or disuse. Angell, Law of Watercourses, §201. Section 3068 of the Civil Code, declares that "An easement may be lost by abandonment, or forfeited by non-user, if the abandonment or non-user continue for a term sufficient to raise the presumption of release or abandonment." If the public, after having acquired the right, ceased for a sufficient length of time to authorize the inference that such right was abandoned, this would be sufficient, without any *express* declaration on the subject. Indeed, we do not see how or in what manner the public could expressly abandon the right. It would be a question for a jury, under all the facts, to determine whether such right, once acquired by continuous use, was subsequently abandoned by non-use. The right of way which the public may have acquired by long use over private property is not exclusive of the right of the owner of such property. If in this case the evidence established the fact that the public had acquired the right to use the water of the river for the purpose of floating logs to market, such right did not prevent the owner of the stream from conveying to the railway company a right of way across the stream. The right of the railway, having been expressly acquired from the owners of the stream, is equal to the right of the public, acquired by usage, to float logs down the river. This conflict of rights must be, if possible, reconciled. In the erection of its bridge across the stream, the railway should be required to do so in such manner as to leave a sufficient passage under the bridge for the drifting of rafts of logs; and the owners of logs are not entitled to the exclusive use of the surface of the river from bank to bank, but only to enough space to enable them to get through conveniently and safely. What would be a fair and reasonable adjustment of these relative rights is a question for the jury.

5. The plaintiffs contend in this instance that they had been

led to make their rafts of the width that they were made, by statements of certain agents of the railway company that the space between the arches of said bridge would be 24 feet wide, and would be sufficient to admit the passage of rafts of said width. These declarations were made by agents of the railway company who had no connection with the erection of the bridge, and were objected to as inadmissible to bind the principal. We think these declarations were inadmissible and were prejudicial to the defendant, and especially so because the court, in his charge to the jury, referred to such declarations and treated them as binding upon the railway. These declarations simply amounted to loose statements of certain agents of the defendant who were in no manner connected with the construction of the bridge in question, and were clearly beyond the scope of their agency.

6. It is insisted that the court erred in his charge, in that he gave in full and in detail the contentions of the plaintiffs and the grounds upon which they based their right to recover, and failed to give in the same manner the corresponding grounds of defendant's contentions, but stated generally that the defendant denied the truth of the plaintiff's contentions. It is well settled that in all cases, in stating the contentions of the parties, the contentions of each should be alike fairly stated. *Rouse v. State, 2 Ga. App.* 184 (58 S. E. 416). The court specifically charged the contentions of the plaintiffs that the Canoochee river was navigable, and therefore a public highway; that the plaintiffs, in common with the public, had acquired by long use the right to use the river to float rafts of timber to market, and that this right had not been abandoned. The corresponding contentions of the defendant, that the Canoochee river was not a navigable stream, and therefore not a public commercial highway, and that the public had never used the river continuously to float rafts of logs for such a length of time as to establish any prescriptive right, and the railway company had constructed said bridge in such manner as not to interfere with or obstruct any reasonable use of the river by the public or by the plaintiffs as a part of the public, should also have been specifically given in charge.

We think a new trial should be granted in this case, because of errors set out in the 4th, 5th, and 6th divisions of this opinion.

*Judgment reversed.*