## OEMLER *v.* GREEN.

Under the pleadings and evidence in the case it does not appear that the court erred in granting the interlocutory injunction.

MARCH 3, 1910.

Injunction. Before Judge Charlton. Chatham superior court. February 3, 1909.

*Osborne & Lawrence,* for plaintiff in error.

*Travis & Travis,* contra.

BECK, J. Anthony Green brought his equitable petition against Augustus Oemler, praying for an injunction to restrain the defendant from interfering. with the free access of petitioner and his agents to enter upon certain leased territory for the purpose of taking oysters therefrom, or exercising any of his rights under his lease. The lease referred to had been obtained by plaintiff in the month of April, 1901 from the commissioners of Chatham county, in accordance with the provisions of the acts of the legislature of 1889 and 1891, relative to the leasing of territory for planting oysters and their cultivation, and included in the lands described in the lease as 5 acres of land under water in Rhodes or Sandy Bottom Creek. Petitioner alleged, that he had planted oysters on said land in accordance with the terms of said lease and the law under which the same was executed, and Oemler had interfered with petitioner and had prevented him from exercising his rights in said leased territory and from entering upon the same and planting oysters thereon or gathering oysters therefrom; that Oemler had been taking oysters from the territory leased, and would continue to do so unless restrained by law; and that by reason of the fact that oysters are a "growing commodity," and for other reasons set out in the petition, it was impossible for petitioner to ascertain the amount of damages he has suffered or will suffer, unless the defendant should be restrained from taking oysters from the leased territory. Among other things not material now to be considered; the defendant set up in his answer the following: That Rhodes or Sandy Bottom Creek is a stream and not an arm of the sea; that it is not a navigable stream; that it is incapable at any season of the year of bearing upon its bosom boats loaded with freight in the regular course of trade; and that defendant had title to and the use and possession of said stream by virtue of the following facts:

that Rhodes Creek is an unnavigable stream lying partially across Warsaw Island; that King George the Second, in 1756, granted Warsaw Island, together with all lakes, ponds, and fishings, including the lands in dispute, and from him the defendant held a lease not yet terminated; that defendant was engaged in the oyster industry, and had expended large sums of money planting oysters to supply his oyster factory; that he had been planting the portion of Rhodes or Sandy Bottom Creek suitable for the cultivation of oysters since the year 1888. Plaintiff introduced in evidence the lease from the commissioners of Chatham county, a copy of which was attached to the petition, and which covered 15 acres of land in Rhodes or Sandy Bottom Creek. He also introduced the affidavits of several witnesses, describing the oyster territory in controversy, the character of Rhodes Creek, and showing the quantity of oysters planted by the plaintiff. He introduced certain charts also. Defendant introduced in evidence a lease from one George Parsons to himself, and numerous conveyances and other muniments of title to his lessor, Parsons, and among others a copy of the grant from King George the Second to James Deveaux, which was the first link in the chain of title to Parsons. Upon the interlocutory hearing the court granted the injunction as prayed, and the plaintiff in error excepted.

In the grant from King George the Second to James Deveaux we find the following description of the property: "All that tract of land containing 1,000 acres, being an island in our province of Georgia, known by the name of Warsaw, bounded on the southeast by the Ocean, on the northeast by Warsaw River and Sound, south-westerly by Little Warsaw Inlet and River and northeast by Warsaw River and Sound, southwesterly by Little Warsaw Inlet and River and northwesterly by Large Marshes. Having such shape, form, and marks as appears by a plat thereof hereunto annexed, together with all woods, underwoods, timber and timber, trees, lakes, ponds, fishings waters, watercourse, profits, commodities, hereditaments, and appurtenances whatsoever, thereunto belonging or in any wise appertaining." The grant contains also certain stipulated provisions and conditions which are in part as follows: "This present grant is upon condition nevertheless, that he the said James Deveaux, heirs or assigns, shall and do, within three years after the date hereof, for every fifty acres of plantable land

hereby granted, clear and work three years after the date hereof, for every fifty acres of plantable land hereby granted, clear and work three acres at least, in that part thereof, as he or they shall judge most convenient or advantageous, or else do clear and drain three acres of swamp or sunken grounds, or drain three acres of marsh, if any such contained herein." The court below in construing the grant held that, "So far from conveying the marshes, the marshes are used to limit the island. They are not part of the island—they are the point beyond which the island is not to go." We are of the opinion that this construction given by the court below to the grant to Deveaux was correct, and the exceptions thereto present no reason for reversing the ruling predicated on that construction.

In the case of *Prey* v. *Oemler,* 120 *Ga.* 223 (47 S. E. 546), the questions decided are not the same as those here presented and decided. There the act of 1902 (Acts 1902, p. 102) was treated as applicable, and the case was tried in the light of and with reference to it. There were suggestions of the unconstitutionality of that act as affecting the case; but it was held that the statements on that subject failed to make any constitutional question for decision. In the case at bar the act of 1902 was not relied on by either party as applicable, but the case was made to turn on the proper construction of the grant from the crown. Neither the application, construction, or constitutionality of that act is here involved. We have been asked to review the decision in *Johnson* v. *State,* 114 *Ga.* 790 (40 S. E. 807). But under the ruling above made, it is unnecessary to do so.

It may be mentioned that in the grant under consideration reference is made to the territory granted as "having such shape, form, and marks as appears by a plat thereof hereunto annexed." The record disclosed that the plat had been lost, and no copy of it was before the court. The trial judge and this court have therefore been compelled to construe the grant from its terms, without such plat.

Upon a consideration of the entire record it does not appear that the court erred in granting the interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and*

ATKINSON, J., dissenting. The grant conveyed Warsaw island as 'an island. Aliunde evidence was introduced, showing a well-defined island which contained woodland and marsh land. It was bounded: north and northeast by Warsaw river (now Wilmington river) and Warsaw sound; east and southeast by the Atlantic ocean; west and southwest by Warsaw sound and Warsaw river (now Odingsell river) ; northwest by Romerley creek, a well-defined stream of water at low and ordinary stages of the tide. Beyond the creek were large marshes. In the grant of the property as an island the "large marshes" mentioned as the northwestern boundary of the property granted had reference to the marshes beyond Romerley creek. Giving the grant this construction it embraced Rhodes creek.