## FLORIDA GRAVEL COMPANY *v.* CAPITAL CITY SAND AND GRAVEL COMPANY.

No. 7658. JULY 21, 1930.

*John R. Wilson* and *Y. L. Watson,* for plaintiff in error.
*A. B. Conger* and *J. T. Goree,* contra.
*George M. Napier, attorney-general, as amicus curiæ.*

HINES, J. The Capital City Sand and Gravel Company, a Florida corporation, filed its petition to enjoin the Florida Gravel Company, also a Florida corporation, from removing from certain whole and fractional land lots in the 14th district of Seminole County, Georgia, sand, gravel, and minerals. Complainant claims the right, under a lease from the true owner of said lots and fractional lots, to take and remove the sand and gravel from and off the same, and particularly the right to remove the sand and gravel from those portions of said lands lying within and adjacent to the Chattahoochee River in said county. It was admitted that the defendant had been going upon portions of said lots and removing sand and gravel therefrom, said portions lying between the low-water mark on the east bank of the Chattahoochee River and the thread of the stream. Of the lots from which the defendant was removing sand and gravel fractional lot 357 is a typical one. This lot was located in Early County when granted, but is now located in the 14th district of Seminole County. This lot was granted by the State to Martin Harden on June 2, 1821. In the plat of this lot, accompanying the grant, it is bounded on the west by the Chattahoochee River. It is admitted that the complainant is the succes-

sor in title of Martin Harden, the original grantee from the State. Under the treaty between the United States and Great Britain of September 3, 1783, the middle or thread of the Chattahoochee River was fixed as the line between Georgia and Florida from parallel of latitude 31 south to the junction of that river and Flint River. By the treaty between this country and Spain of October 27, 1795, the same line between the United States and Spain, which then owned east and west Florida, was fixed. Thus the west half of the river south of parallel 31 lies in the State of Florida. The evidence shows that the point at which the defendant company was removing sand and gravel, at the time the injunction in this case was granted, is south of parallel 31.

The issue involved in this case is whether the owners of lands adjacent to the east bank of the Chattahoochee River, south of said parallel of latitude, have title to the soil between the low-water mark on the east side, and the middle of the stream. In *Young* v. *Harrison*, 6 *Ga.* 130, this court was dealing with the rights of riparian owners of land on the Chattahoochee River; and the particular question involved was whether the owners of lands abutting the Chattahoochee on the Georgia side were entitled to operate a public ferry for the transportation of travelers and others to and from Eufaula on the Alabama side of this stream, by reason of the fact of their ownership of the lands abutting the river on the Georgia side. The owners of the Georgia lands contended that they owned the soil under the Chattahoochee River to the west bank of that stream, and that in consequence of the ownership of these lands they were entitled to operate a public ferry across the same. It thus became necessary for this court to define the rights of the owners of land abutting upon a navigable stream, where the tide did not ebb and flow. This court held that rivers are of three kinds; that the first are such as are wholly and absolutely private property; that the second are such as are private property subject to the servitude of the public for passage over them, the distinguishing feature between these two being whether they are susceptible or not of use for a common passage; and that the third are rivers where the tide ebbs and flows, commonly called arms of the sea. In that case this court said: "It is not pretended that the Chattahoochee is at this point a navigable river, where the tide ebbs and flows; such is notoriously not the fact; it belongs to the second class

or division in the foregoing enumeration. Now, it is well settled in England, and the doctrine is pretty uniform in this country, that the proprietor of the land on the margin owns the bed over which the river passes; and though it be nominally and in terms bounded on the margin, it extends, by construction of law, to the middle of the stream. In this case it reaches to the opposite bank, that being the western boundary of the State. The public right is one of passage, and nothing more, as in a common highway; it is called in the books an *easement*, and the proprietor of the adjoining land has the right to use the land and water of the river in any way not inconsistent with this easement." In *Jones* v. *Water Lot Co.*, 18 *Ga.* 539, this court was dealing with the rights of a grantee under a grant from the State to a lot bounded by the Chattahoochee River. In passing upon this question this court said that in *Young* v. *Harrison*, supra, "this court held that grants of land bounded on rivers, above tide-water, or where the tide does not ebb and flow, carry the grantee to the middle of the river. And that in grants bounded by the Chattahoochee, this riparian right extended to the opposite bank; that, and not the river itself, being the western boundary of Georgia." Here the court was dealing with a grant to a lot abutting upon this river north of parallel 31. This court in that case further said: "And we see nothing to change or modify that opinion. True, the plaintiff's fraction, No. 1, is bounded by the Chattahoochee River; but by construction of law it reaches to the opposite shore, unless there are expressions in the terms of the grant, taken in connection with the situation and condition of the land granted, which clearly indicate the intention of the State to stop at the eastern edge or margin of the river."

So it has been plainly held by this court that the owners, under grants from the State, of lands abutting on the Chattahoochee River north of parallel of latitude 31 are entitled to the soil under the river to the western bank thereof, and that the owners, under grants from the State, of lands abutting on this stream south of said parallel of latitude are entitled to the soil under this stream to the middle or thread of the stream. So we are of the opinion that under these decisions of this court the complainant is entitled to remove the sand and gravel from the fractional lot with which we have been dealing, and from the other lots similarly situated. In this country the decisions relating to this subject are in irre-

concilable conflict. In a large number of States the courts, following the letter of the English doctrine, hold, without qualification, that a grant or conveyance of land bounded by a navigable non-tidal river, in the absence of anything in the grant or deed to show a contrary intention, is presumed to carry title to the thread of the stream. This ruling is based on the theory that it could not be anticipated that a grantor would desire to retain title to the bed of a stream between the shore and the center line thereof, when he had conveyed the abutting upper lands. 9 C. J. 185 (§ 63), and cases cited in note 81. Ownership of land to the center of a stream, however, is subservient to public rights substantially the same as those incident to navigable waters at the common law, although exclusive as to all others except the State and the general government, and even as to them except as they may act by their properly constituted authorities in protecting, preserving, or improving such right. Franzinni v. Layland, 126 Wis. 72 (97 N. W. 499) ; Hobart v. Hall, 184 Fed. 476. In many jurisdictions the decisions are in conflict with the view just stated. They are based on the theory that as these streams, although not "arms of the sea," have been determined to be in fact navigable, the rule applicable to the bed of navigable tidewater streams at common law should govern them; and that, as the beds of navigable streams were reserved by the States when the constitution of the United States was adopted, the title to the beds of those rivers is in the States. 9 C. J. 186 (§ 64), notes 91, 92, 94. The principle embodied in section 3632 of the Code is not applicable under the facts of this case, that principle becoming the law of this State for the first time by adoption of the Code of 1863 ; and the same will not be construed to apply to grants of land by the State prior to the adoption of that code. In view of the former rulings of this court in the cases cited, and the conflict between the decisions of outside courts, we repeat in substance what was said by this court in *Jones* v. *Water Lot Co.*, supra, that we see no reason to change or modify the rulings in the previous decisions of this court.

*Judgment affirmed. All the Justices concur.*