S97A1074. GIVENS v. ICHAUWAY, INC.
(493 SE2d 148)

HINES, Justice.

Ichauway, Inc., d/b/a Joseph W. Jones Ecological Research Center ("Ichauway"), sued to enjoin Givens from trespassing on real property Ichauway leases, specifically Ichauwaynochaway Creek, which flows through Ichauway's leasehold. Ichauway leases the land on both sides of the creek for 14 miles of its length and conducts ecological research on the stream. At one point on the stream a dam was installed some years ago to generate electricity. Although it is no longer used for that purpose, the dam remains and blocks the passage of boats.

Givens appeals the grant of summary judgment to Ichauway. He contends that he has the right to float down the creek through the property.

---

1. Although it may be more efficient to await a bench trial in a case involving an injunction rather than pursue summary judgment, there is nothing precluding summary judgment in a case involving an injunction, see *Ga. Canoeing Assn. v. Henry*, 263 Ga. 77, 78-79 (428 SE2d 336) (1993), and the court's order granting summary judgment is before this Court for review. Nor is there anything inherent to the issue of navigability of a stream that precludes summary judgment on that issue, when the evidence so requires. Ichauway's motion for summary judgment rested on evidence the stream was not navigable and the question here is whether Givens has presented any admissible evidence showing there is a genuine issue of material fact as to the stream's navigability. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Wilson v. Nichols*, 253 Ga. 84, 86 (3) (316 SE2d 752) (1984).

Ichauway holds a lease to the land on both sides of the creek and therefore has the right to exclude others from the creek unless the stream is navigable or some servitude exists. See OCGA §§ 44-8-3; 44-8-5 (b); *Parker v. Durham*, 258 Ga. 140 (365 SE2d 411) (1988); *Bosworth v. Nelson*, 172 Ga. 612 (158 SE 306) (1931); *Bosworth v. Nelson*, 170 Ga. 279 (152 SE 575) (1930). To be considered navigable, a stream must be "capable of transporting boats loaded with freight in the regular course of trade either for the whole or a part of the year. The mere rafting of timber or the transporting of wood in small boats shall not make a stream navigable." OCGA § 44-8-5 (a).[1]

In an attempt to show the creek is navigable, Givens floated through Ichauway's leasehold on a styrofoam and wood raft that was four feet wide, sixteen feet long, and drew one foot of water. He loaded the raft with a goat, a bale of cotton, and two passengers, disassembling the raft and portaging around the dam. He argues the goat, cotton, and passengers were freight and his trip showed the creek was capable of use for transporting freight under OCGA § 44-8-5 (a), despite the presence of the dam. OCGA § 44-8-5 (a), however, requires that to be deemed navigable, a stream must support freight traffic "in the regular course of trade." Givens does not claim craft such as his are currently used in the regular course of trade but does contend the raft is representative of craft that were so used in the nineteenth century. He argues this shows the creek was formerly navigable under the definition, and that once a stream is susceptible of navigation that status is not lost. He also relies upon this argu-

---

[1] We do not address the question of whether this creek is subject to a federal navigational servitude. See *United States v. Harrell*, 926 F2d 1036, 1040-1044 (11th Cir. 1991). Givens did not raise the issue below and the court did not rule on it, *Contestabile v. Business Dev. Corp.*, 259 Ga. 783, 784 (3) (387 SE2d 137) (1990), nor has Givens argued before this Court that such a servitude applies.

ment to maintain that the creek can be deemed navigable despite the presence of the dam which undisputedly prevents the free passage of boats through the creek.

Irrespective of whether a stream once regarded as navigable is forever so regarded, the record does not show that this creek was ever navigable under the statutory definition. Although Givens testified that it was navigable under nineteenth century standards, his deposition shows this testimony was inadmissible hearsay based upon the statements of others and upon documents that were not introduced. See *Lance v. Elliott*, 202 Ga. App. 164, 167 (413 SE2d 486) (1991); *Gunnin v. Swat, Inc.*, 195 Ga. App. 344, 345 (393 SE2d 700) (1990). He testified that whether any commerce had actually occurred on the stream was "[n]ot to my knowledge, no sir. Others, yes. That's just hearing old-timers talk." The testimony of these unnamed individuals was never introduced. Givens also testified that a book on the history of the area spoke of commercial traffic on the stream, but that book was not introduced. Nor was any admissible evidence presented to show that Givens' raft replicated the dimensions or manner of any craft used in the regular course of commerce in the past.

Not only was no admissible evidence presented to show historical navigation on the stream, none shows the stream to be navigable under current commercial standards. Unrebutted expert testimony showed that the smallest barge normally in use for commercial transport on the Flint River (into which the creek flows) is 245 feet long, 35 feet wide, and draws seven and one-half feet of water. Givens testified such a barge could be floated down the creek approximately 30 days of the year, but for the presence of the dam. However, his deposition discloses that he had no experience in commercial water transport, there is no foundation for his opinion, and he is not competent to testify as to these matters. See *Tony v. Pollard*, 248 Ga. 86, 88-89 (2) (281 SE2d 557) (1981).[2]

This Court cannot, as the dissent would do, look to the appointment of commissioners to investigate the creek's navigability in 1831, see Ga. L. 1831, p. 264, and cannot look to the appropriation of funds "to the navigation" of the creek in 1836, see Ga. L. 1836, p. 31, as evidence supporting a ruling that summary judgment was improper. When reviewing orders on motions for summary judgment, "[a]ppellate courts will review only evidence presented to the trial court before its ruling on the motion. Additional evidence will not be admitted on appeal." *Meade v. Heimanson*, 239 Ga. 177, 180 (236

---

[2] Expert testimony was that such a vessel could not navigate the creek because of shoals and turns too tight for its length.

SE2d 357) (1977). These legislative actions were not raised before the court below, nor even cited to this Court on appeal, and add nothing to our review of whether there was evidence showing this creek to be navigable.

As there was no admissible evidence showing navigability, the court correctly granted summary judgment on this question.

2. Givens also suggests that there is a public right of common passage on the creek, relying on the following language from *Young v. Harrison*, 6 Ga. 130, 140-141 (1849):

> Rivers are of three kinds: 1st. Such as are wholly and absolutely private property. 2d. Such as are private property, subject to the servitude of the public interest, by a passage upon them. The distinguishing test between the two is, whether they are susceptible or not of use for a common passage. 3d. Rivers where the tide ebbs and flows, which are called arms of the sea. [Cit.]

It is contended that *Young* either grants or recognizes a common law public right of passage other than the statutory right established by OCGA §§ 44-8-2 and 44-8-5.

The Code of 1863 was intended to codify then existing law, including that derived from the common law and the decisions of this Court, see *Ga. Power Co. v. Watts*, 184 Ga. 135, 138 (1) (190 SE 654) (1937), and it is understood to do so "unless the contrary manifestly appears from the words employed." *Clark v. Newsome*, 180 Ga. 97, 100 (178 SE 386) (1935). That Code contained the definition of a navigable stream, see OCGA § 44-8-5 (a) (Code of 1863, § 2208), as well as the principle that the beds of nonnavigable streams belong to the owner of the adjacent land, see OCGA § 44-8-2 (Code of 1863, § 2207). It also declared that the owner of a nonnavigable stream has the right to exclusive possession of it. See OCGA § 44-8-3 (Code of 1863, § 2210). Thus, under that Code, no servitude of public passage is imposed upon a stream unless it is navigable under the Code. The Code of 1863 is presumed to be a correct statement of the law in this state prior to its enactment, and the burden is on one who would argue otherwise to prove such contention. *Mechanics Bank v. Heard*, 37 Ga. 401, 413 (1867).

This state adopted the common law of England as it existed on May 14, 1776. See *Crowder v. Dept. of State Parks*, 228 Ga. 436, 439-440 (3) (185 SE2d 908) (1971). In English common law, only those streams where the tide ebbed and flowed could be considered navigable and subject to the servitude of a right of common passage. See *The Daniel Ball*, 77 U. S. 557 (10 Wall. 557, 560) (1871); *Boardman v. Scott*, 102 Ga. 404, 406 (30 SE 982) (1897). It is uncontested that this

stream is not tidal. Therefore, any right of passage the public has on this stream, in which both banks are in the hands of one private party, arises from the statutory law of Georgia or the common law of Georgia.

Neither Givens nor the dissent rebuts the presumption that the Code of 1863 correctly stated existing law. Nineteenth century statements of what constituted navigability under *federal* law do not show that the codifiers of 1863 misstated the law of *Georgia* when they defined navigable streams and delineated the rights of persons in those streams. *Young* was decided prior to 1863, and the only reasonable conclusion is that the Code of 1863 included the second kind of stream recognized in *Young*, supra at 141, when the Code of 1863 set forth the definition of a navigable stream. Thus, the servitude *Young* recognized on a stream "susceptible . . . of use for a common passage" is identical to the servitude imposed on a navigable stream as defined in OCGA § 44-8-5 (a). There is nothing in *Young* that imposes a servitude of common passage on a stream that is not navigable as defined in OCGA § 44-8-5 (a).

Citing *Florida Gravel Co. v. Capital City Sand &c. Co.*, 170 Ga. 855, 858 (154 SE 255) (1930), Givens also contends OCGA § 44-8-5 (a) does not apply to this stream because the chain of title to this land is traceable to a state grant that pre-dates the 1863 passage of the statute's predecessor.[3] *Florida Gravel* stated that § 3632 of the Civil Code of 1910 would not be applied to grants of land prior to the 1863 adoption of § 3632. That Code section is now found at OCGA § 44-8-5 (b) and addresses the property rights of landowners adjacent to navigable streams. The definition of navigability in OCGA § 44-8-5 (a) was not addressed in *Florida Gravel*, and the opinion does not impact the application of the definition of navigability. See *Parker v. Durham*, 258 Ga. 140 (365 SE2d 411) (1988), which did not apply OCGA § 44-8-5 (b) to property rights because of a pre-1863 grant but did apply OCGA § 44-8-5 (a) as to the definition of navigability.

3. Givens contends the public has acquired an easement of passage on the creek by boating on it for more than 20 years, relying upon *Seaboard Air-Line R. v. Sikes*, 4 Ga. App. 7 (60 SE 868) (1908). The public servitude described in *Seaboard* is based upon OCGA § 44-5-230 (former Civil Code of 1895, § 3591), as an implied dedication to the public. *Seaboard* at 10 (3). Dedication under that Code section requires some acceptance by the appropriate public authori-

---

[3] Givens also raises an 1814 treaty between the United States and the Creek Indian Nation that ceded the land at issue to the United States. He contends the treaty shows the United States reserved navigation rights over all waters. However, navigation rights were granted to the United States as to lands retained by the Creek Nation and that portion of the treaty does not apply to the land at issue here.

ties, *Chatham Motorcycle Club v. Blount,* 214 Ga. 770, 773 (1) (107 SE2d 806) (1959), and Givens points to nothing in the record to show such acceptance.

Nor does the record support any private easement to boat on the creek arising by prescription. Givens' deposition and affidavits of other users of the creek fail to show that any notice of an adverse claim was given to Ichauway or any predecessor in title. Such notice is required to show prescription. *Eileen B. White & Assoc. v. Gunnells,* 263 Ga. 360, 361 (434 SE2d 477) (1993). Use of the stream without such notice establishes nothing more than a revocable license. Id. at 362.

4. Summary judgment to Ichauway was also warranted on Givens' counterclaims for denial of his right to enjoy a public easement and malicious prosecution. Givens failed to show any right to travel on the creek, and the record is devoid of any evidence showing that Ichauway acted with malice or without probable cause in securing his arrest for doing so. See *Wal-Mart Stores v. Blackford,* 264 Ga. 612, 613 (449 SE2d 293) (1994).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Hunstein, J., who dissent.*

FLETCHER, Presiding Justice, dissenting.

This case is not about the ownership of the creek bed or the rights of property owners adjacent to the creek. The issue in this case is whether the public has a statutory or common law right of passage on the Ichauwaynochaway Creek because it is, or was, capable of navigation. The majority opinion misconstrues the statutory definition of navigable stream under state law and ignores the public's right to use interstate waterways under the commerce clause of the United States Constitution. Because the record presents disputed issues of material fact, I would reverse and, on remand, would direct the trial court to consider whether the Ichauwaynochaway Creek is a navigable water under federal or state law.

1. Until today, this Court has never approved the grant of summary judgment on the issue of the navigability of a river or other body of water. In *Ga. Canoeing Assn. v. Henry,*[4] we reversed the grant of summary judgment that enjoined the public from passing through Henry's property on Armuchee Creek. Citing previous cases, we explained that summary judgment was generally inappropriate in equitable matters and that parties should proceed to a bench trial where the trial court can resolve disputed issues of material fact.[5]

---

[4] 263 Ga. 77 (428 SE2d 336) (1993).

[5] See *Beaulieu of America v. L.T. Dennard & Co.,* 253 Ga. 21, 22 (315 SE2d 889) (1984); *King v. Ingram,* 250 Ga. 887, 888 (302 SE2d 105) (1983).

That ruling was consistent with the two other cases in which this Court has considered the question of a river's navigability at the interlocutory injunction stage. In *Parker v. Durham*,[6] this Court reversed the trial court's grant of summary judgment enjoining the public from traveling on the Hughes Old River by boat because the record showed questions of fact on the navigability of the river where it joins the Altamaha River in Long County. Likewise, we found conflicting evidence in *Maddox v. Threatt*[7] on whether the Chattahoochee River between Morgan Falls Dam and Holcomb Bridge was a navigable river. A review of the record in that case shows that the adjoining property owner contended that the Chattahoochee was not capable of holding craft other than a shallow-draft canoe or flatboat due to shoals, rocks, and shallow water; the state contradicted that evidence by asserting that the relevant portion of the river could bear small freight-laden craft with a three-foot draft and eight-foot beam.

This case is in the same procedural posture as the *Ga. Canoeing* case in its second appearance before this Court.[8] After the trial court here granted an interlocutory injunction, the property owner moved for summary judgment on its request for a permanent injunction, which the trial court granted. Since the trial court failed to consolidate the hearing on the interlocutory injunction with the trial on the request for a permanent injunction, this case should be reversed and remanded for a hearing.

2. OCGA § 44-8-5 provides the description of navigability for waters under this state's law. The statute defines the term "navigable stream" as "a stream which is capable of transporting boats loaded with freight in the regular course of trade either for the whole or a part of the year. The mere rafting of timber or the transporting of wood in small boats shall not make a stream navigable."

The legislature first adopted this definition of navigable streams as part of the Code of 1863.[9] In appointing persons to prepare that code, the General Assembly instructed them to develop a code that embraced the existing law, whether derived from common law, State Constitution, state statutes, Supreme Court decisions, or English statutes.[10] Since the codifiers had no authority to originate new

---

[6] 258 Ga. 140, 142 (365 SE2d 411) (1988). The property owner offered evidence showing that land formed a barrier between the two bodies of water at low tide; the fishermen offered evidence that boats could pass between the two rivers even at low tide.

[7] 225 Ga. 730, 731 (171 SE2d 284) (1969).

[8] See *Ga. Canoeing II*, 263 Ga. at 77-78; see also *Ga. Canoeing Assn. v. Henry*, 267 Ga. 814 (428 SE2d 298) (1997) (affirming the permanent injunction against public use entered after a bench trial); *Ga. Canoeing Assn. v. Henry*, 261 Ga. XXIX (1992) (affirming grant of interlocutory injunction without an opinion).

[9] The Code of the State of Georgia § 2208 (1863).

[10] Ga. L. 1858, p. 95.

matter, the presumption is that the legislature did not intend to change the law.[11] Thus, it is instructive to consider the common law at the time the Code of 1863 was approved to assist in interpreting the statute.

At English common law, a navigable stream was defined as a river or stream in which the tide ebbed and flowed.[12] In response to different conditions in this country, the courts expanded the term to include freshwater rivers and lakes. In 1849, this Court described three kinds of rivers:

> 1st. Such as are wholly and absolutely private property. 2d. Such as are private property, subject to the servitude of the public interest, by a passage upon them. The distinguishing test between these two is, whether they are susceptible or not of use for a common passage. 3d. Rivers where the tide ebbs and flows, which are called arms of the sea.[13]

In defining the rights of the public on the second class of rivers, the United States Supreme Court held in *The Daniel Ball*[14] case that rivers are navigable in law if they are navigable in fact. "And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water."[15]

In defining commerce on water, the courts do not limit the term solely to the carrying of merchandise, but also apply it to the carrying of passengers[16] and the rafting of logs and timber.[17] The presence of artificial obstructions, such as dams or bridges, does not prevent the stream from being navigable in law if it would be navigable in fact in its natural state.[18] Once a stream is found to be navigable, it remains so.[19] Thus, if a stream is, or was, naturally of sufficient size to float boats, vessels, rafts, or logs, whether propelled by animal power,

---

[11] See *Rogers v. Carmichael*, 184 Ga. 496, 504 (192 SE 39) (1937).

[12] Black's Law Dictionary 926 (5th ed. 1979); see *Boardman v. Scott*, 102 Ga. 404, 406 (30 SE 982) (1897).

[13] *Young v. Harrison*, 6 Ga. 130, 141 (1849).

[14] 77 U. S. (10 Wall.) 557 (1871).

[15] Id. at 563.

[16] See id. at 564.

[17] See Joseph K. Angell, A Treatise on the Law of Watercourses 695-697 (7th ed. J.C. Perkins ed. 1877).

[18] *Economy Light &c. Co. v. United States*, 256 U. S. 113, 118 (41 SC 409, 65 LE 847) (1921).

[19] *United States v. Appalachian Elec. Power Co.*, 311 U. S. 377, 408-409 (61 SC 291, 85 LE 243) (1940) (absence of use because of the coming of the railroad, improved highways, or other changed conditions does not affect the navigability of rivers in the constitutional sense; *Economy Light &c. Co.*, 256 U. S. at 123-124.

wind, or steam, the river is navigable water and the public has the right to use the stream.[20]

3. In interpreting statutes, the cardinal rule of construction is to follow the legislature's intent. Statutes adopted in derogation of the common law must be strictly construed.[21] "Unless the contrary manifestly appears from the words employed, the language of a Code section should be understood as intending to state the existing law, and not to change it."[22]

Comparing the common law as developed in this country with the statute adopted in Georgia, it appears that the statute generally follows the common law on navigable rivers in the first sentence. That sentence defines a "navigable stream" as one that is capable of transporting boats loaded with freight in the regular course of trade for at least part of the year. On the other hand, the statute appears to have adopted a more restrictive definition than the common law in the second sentence, which eliminates the rafting of timber or flotage of logs as sufficient evidence to prove navigability.[23] Construing the two sentences together, the proper standard in determining the navigability of a stream under Georgia law is whether the stream has been used, or is capable of being used, to transport boats loaded with freight other than timber or logs.

In applying this standard, courts may consider the historical use of the river.[24] That is, it is the river's capacity for commercial traffic as understood by lawmakers at the time they adopted the definition of navigable streams that applies.[25] If we were to adopt the property owner's position that the modern standard of commercial navigation controls, it would be difficult to find any river or stream that is navigable in the State of Georgia.[26]

This standard is consistent with the few cases in which our appellate courts have determined whether a particular stream or creek is navigable under OCGA § 44-8-5.[27] In the first reported case,

---

[20] Angell, supra, note 17 at 695.

[21] *Johnson v. State*, 114 Ga. 790, 791 (40 SE 807) (1901).

[22] *Lamar v. McLaren*, 107 Ga. 591, 599 (34 SE 116) (1899).

[23] See *Ga. Canoeing III*, 267 Ga. at 815, n. 4.

[24] See, e.g., *Appalachian Elec. Power Co.*, 311 U. S. at 411-417; *United States v. Utah*, 283 U. S. 64, 83 (51 SC 438, 75 LE 844) (1931); *Economy Light &c. Co.*, 256 U. S. at 117-118; *The Montello*, 87 U. S. (20 Wall.) 430, 440-441 (22 LE 391) (1874).

[25] See 1985 Ga. Op. Atty. Gen. U85-8.

[26] Cf. *The Montello*, 87 U. S. at 441 (in relying on "Durham boats" propelled by animal power, noted that it "would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway").

[27] See also *Rauers v. Persons*, 144 Ga. 23 (86 SE 244) (1915) (affirming conclusion that McQueen's Inlet on St. Catherine's Island is a navigable tidewater as defined in OCGA § 44-8-7), overruled on other grounds in *State v. Ashmore*, 236 Ga. 401, 413-414 (224 SE2d 334) (1976); *Johnson v. State*, 114 Ga. at 791, 792 (holding that term "navigable stream" does not

we found that Knoxboro Creek, a tidewater stream flowing into the Savannah River, was navigable where it provided transportation for flatboats and their cargoes from a rice plantation to the City of Savannah.[28] Subsequently, the Court of Appeals found that the Canoochee River was not navigable because it was not capable of floating any boat loaded with freight or passengers at any time and was not capable of rafting logs or timber unless its waters were swollen by rain.[29] Finally, without any discussion of the facts, this Court affirmed trial court judgments concluding that part of the Ogeechee River and the Armuchee Creek were not navigable streams under the statute.[30]

In this case, the trial court erroneously concluded as a matter of law that the Ichauwaynochaway Creek was not a navigable stream as defined by the state statute. It based this conclusion of law on its factual findings that a dam crosses the creek, a big tree lies across the creek immediately below the dam, the creek has rock shoals within two feet of the surface, and the size of boats that travel on the creek is limited. It failed to consider the cases applying the common law on navigable streams and then failed to construe the evidence in the light most favorable to Givens, instead resolving issues of fact in favor of Ichauway, Inc. The majority opinion compounds the error by its reliance on irrelevant expert testimony concerning the inability of a present-day commercial barge to travel the creek and its summary dismissal of all evidence supporting the creek's capacity for freight traffic at the time the legislature first adopted the statute. None of the factors on which the trial court and the majority rely precludes a stream from being considered navigable under the state statute.

Construing the evidence in the light most favorable to Givens, as this Court must do on summary judgment, the record raises a disputed issue of material fact concerning the navigability of the creek. The evidence shows that the Ichauwaynochaway Creek is 75 to 200 feet wide; the creek through Ichauway's property was used in the past to transport agricultural products south to the Flint River; the creek can still carry boats loaded with freight commonly used in the regular course of trade in the nineteenth century, as illustrated by the raft used in the Goat Float; and the power dam is an artificial obstruction that was built this century. Further, a review of state

---

apply to a bay, estuary, or arm of the sea).

[28] See *Charleston &c. R. v. Johnson*, 73 Ga. 306 (1884) (record showed the stream was seventy-five to two hundred feet wide, fourteen feet deep where the bridge crossed it, and had an ebb and flow of three-and-one-half feet).

[29] See *Seaboard Air-Line R. v. Sikes*, 4 Ga. App. 7, 9 (60 SE 868) (1908).

[30] See *Brantley v. Lee*, 139 Ga. 600 (77 SE 788) (1913) (Ogeechee River dividing Screven and Bulloch Counties); *Ga. Canoeing III*, 267 Ga. at 814 (Armuchee Creek in northwest Georgia).

statutes supports Givens' contention that the Ichauwaynochaway Creek has borne commercial traffic in the past. As part of legislative efforts to protect and improve navigation in the state's rivers and creeks, the Georgia General Assembly in 1831 appointed three commissioners to examine the navigation of the Ichauwaynochaway Creek, described by citizens as "navigable for a considerable distance in Baker County,"[31] and appropriated $1,500 in 1837 for the creek's navigation.[32] Based on this evidence, I would reverse the grant of summary judgment and instruct the trial court to hear further evidence on the navigability of the creek under state law based on its past and present capacity for water trade.

4. Finally, the trial court erred in considering navigability solely under state law. The question of navigability is a federal question.[33] A river is a navigable water of the United States when it forms by itself, or in connection with other waters, a continuous highway over which commerce may be carried with other states and countries.[34] The waters of the Ichauwaynochaway Creek flow into the Flint River, which joins the Chattahoochee River in the southwest corner of the state to form the Apalachicola River. The Apalachicola flows south across northwest Florida to the Gulf of Mexico.[35] Therefore, the Ichauwaynochaway goes all the way to the gulf and is part of interstate commerce.

Because the creek is part of interstate commerce, federal law applies.[36] The federal test of navigability is whether a river is used, or susceptible of being used, in its ordinary condition to transport commerce.[37] On remand, the trial court should first consider whether the creek is navigable in fact under federal law before considering whether it is a navigable stream under state law.

I am authorized to state that Justice Hunstein joins in this dissent.

---

[31] Ga. L. 1831, p. 264.

[32] Ga. L. 1836, p. 31.

[33] *Utah v. United States*, 403 U. S. 9, 10 (91 SC 1775, 29 LE2d 279) (1971).

[34] *The Daniel Ball*, 77 U. S. at 563.

[35] U. S. Army Corps of Engineers, Water Resources Development in Georgia 1993, p. 25 (1993).

[36] See 78 AmJur2d 503, Waters, §§ 61, 72 (1975); cf. *Blalock v. Brown*, 78 Ga. App. 537 (1949) (since under the commerce clause Congress may require the recording of the purchase and operation of vessels on a navigable stream traversing two states, by analogy Congress would have the same right to legislate the recording of airplanes with a federal agency).

[37] *United States v. Harrell*, 926 F2d 1036, 1039 (11th Cir. 1991) (citing *United States v. Appalachian Elec. Power Co.*, 311 U. S. 377, 406 & n.19 (1940)).

DECIDED NOVEMBER 24, 1997.

Divine, Dorough & Sizemore, Kermit S. Dorough, Jr., for appellant.

James C. Brim, Jr., Robert C. Richardson, Jr., for appellee.

Bondurant, Mixson & Elmore, Michael B. Terry, Paul H. Schwartz, Kilpatrick Stockton, Julie V. Mayfield, Wilson, Strickland & Benson, Daniel I. MacIntyre, Walker, Hulbert, Gray & Byrd, Michael G. Gray, Killorin & Killorin, Virginia W. Killorin, Edward W. Killorin, amici curiae.