## RAUERS et al. v. PERSONS et al., executors.

1. Under the Civil Code (1910), § 3636, a navigable tidewater includes any inlet of the sea where the tide regularly ebbs and flows, which is in fact used for purposes of navigation, or is of such a character as to be capable of bearing upon its bosom, at mean low tide, boats loaded with freight in the regular course of trade. With respect to the latter classification it is not essential that there be a public terminus at both ends of the inlet, but the navigability of the inlet is determined by the capability of the water to bear boats of the character described in the statute at mean low tide.

2. Where a navigable inlet is landlocked by land privately owned, the landowner's property rights extend to low-water mark; and the public has no right to use the adjacent land above low-water mark in connection with fishing, or otherwise to trespass thereon.

AUGUST 13, 1915.

Petition for injunction. Before Judge Conyers. Glynn superior court. August 27, 1914.

*Adams & Adams,* for plaintiffs.

*J. T. Colson,* for defendants.

EVANS, P. J. Saint Catherine's Island lies just off the coast of the State of Georgia. It is about eleven miles long and three miles wide. It is a part of the territory of Liberty county. It is entirely owned by the estate of Jacob Rauers. McQueen's Inlet enters the island from the Atlantic Ocean on the east and runs tortuously into the island in a westerly direction for several miles, and terminates in the marshes land of the island. The executors of Jacob Rauers filed a petition against the defendants, to enjoin

them from the use of McQueen's Inlet for fishing and for other purposes. The defendants answered that McQueen's Inlet is a navigable stream and navigable tide-water, and that the public has the right to be in and upon the waters and to fish therein. At the hearing the court heard evidence, and reached the conclusion that McQueen's Inlet was of sufficient depth at mean low tide to permit its navigation with loaded boats in the regular course of trade. Upon this conclusion of fact the court denied the injunction prayed, and the plaintiffs sued out this bill of exceptions.

1. There was evidence to support this finding of fact, and the legal question presented is whether McQueen's Inlet is a navigable water as defined by our statutes. The contention of the plaintiffs is, that in order for a tide-water to be navigable there must be a public terminus at each end, and that navigable inlets which open upon the ocean, or lead into private lands, are not public navigable water. In 1902 the General Assembly of this State enacted a statute defining navigable tide-waters, and the rights of owners of the adjacent land. The title of the act is "to fix and prescribe the boundaries of land adjacent to or covered by or bordering on the tide-waters of this State, and to prescribe all rights of the owners of such adjacent lands within such boundaries, and to define navigable tide-waters, and for other purposes." This act will be found in the Civil Code (1910), §§ 3635, 3636, 3637. The first section refers to the title to the beds of non-navigable tide-waters. The next section defines a navigable tide-water to be "any tide-water, the sea, or any inlet thereof, or other bed of water where the tide regularly ebbs and flows, which is in fact used for the purposes of navigation, or is capable of bearing upon its bosom, at mean low tide, boats loaded with freight in the regular course of trade. The mere rafting of timber thereon, or the passage of small boats thereover, whether for the transportation of persons or freight, shall not be deemed navigation within the meaning of this and the preceding section, and does not make tide-water navigable." The last section provides: "For all purposes, including among others the exclusive right to the oysters and clams (but not to include other fish) therein or thereon being, the boundaries and rights of owners of land adjacent to or covered in whole or in part by navigable tide-waters, as defined in the preceding section, shall extend to low-water mark in the bed of the water: Provided, how-

ever, that nothing in this and the two preceding sections shall be so construed as to authorize such an exclusive appropriation of any tide-water, navigable or unnavigable, by any person whomsoever, as to prevent the free use of the same by others for purposes of passage and for the transportation of such freights as may be capable of being carried thereover." In many jurisdictions the essential test of navigability is that the stream shall be a highway between places,—that it must have at each end a public terminus, or, as expressed by some of the judges, there must be a terminus ad quem, as well as a terminus a quo. Attorney-General v. Woods, 108 Mass. 439 (11 Am. R. 380) ; Chisolm v. Caines, 67 Fed. 285. Our statute is not so restricted in its definition of navigability. By express terms two tests are given. One tide-water is an inlet where the tide regularly ebbs and flows, which is in fact used for purposes of navigation. This refers to an established public highway, having a public terminus at each end. Another tide-water is one "capable of bearing upon its bosom, at mean low tide, boats loaded with freight in the regular course of trade." In this second classification the navigability of the water is determined, not from its being an actual highway with a public terminus at each end, but from its capability of becoming a highway, that is to say, from its capability of bearing boats of a certain burthen at mean low tide. The court gave the statute this construction, and, under the facts, found that the inlet was of sufficient depth to support upon its bosom, at mean low tide, boats loaded with freight in the regular course of trade.

2. There was evidence that the defendants, who were fishermen, used the land of plaintiffs, above low-water mark, in tying their gill-nets, and in drawing the fish from the water, and also that "young oysters were very much frightened" by having the gill-nets drawn over them. Inasmuch as the property rights of the plaintiffs extend to low-water mark, the plaintiffs were entitled to an injunction restraining the defendants from thus trespassing upon their land in the manner set out in the petition, and shown by the evidence. Accordingly the judgment refusing an injunction is modified in this respect.

*Judgment affirmed, with direction. All the Justices concur.*