26800. WEST et al. v. BAUMGARTNER et al.

ARGUED NOVEMBER 8, 1971—DECIDED JANUARY 24, 1972—
REHEARING DENIED FEBRUARY 15, 1972.

*Oliver, Maner & Gray, Thomas S. Gray, Bennet, Gilbert, Gilbert & Whittle, Wallace E. Harrell,* for appellants.

*Alton D. Kitchings,* for appellees.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, James B. Talley, Robert S. Bomar, Assistant Attorneys General,* amicus curiae.

GRICE, Justice. This review involves the denial of a motion for summary judgment made by the defendants in a suit seeking damages for malicious prosecution.

Separate suits were filed by ,Edward H. Baumgartner, Rudolph H. Padgett and James E. Padgett in the Superior Court of Chatham County, Georgia, against the following:

Eleanor T. West; the Citizens & Southern National Bank of Georgia, as co-trustee and William F. Torrey, Jr., as co-trustee, under a trust set up under the last will and testament of Nelle Ford Torrey; William F. Torrey, Jr., individually and as beneficiary; Annette Torrey Frazer, individually and as beneficiary; Emory T. Torrey, individually and as beneficiary; Randall F. Torrey, a minor, individually and as beneficiary; Julian C. Sipple, as attorney; and Ossabaw, Inc. By amendment Ossabaw Island Project Foundation was made a party defendant.

Count 1 of each complaint related to false imprisonment.

Count 2 of each complaint alleged that the plaintiffs were maliciously prosecuted by the defendants in the City Court of Savannah because of illegal fishing in violation of *Code Ann.* § 45-701 (Ga. L. 1955, pp. 483, 523), which in material part is as follows: "Any person who shall fish in the waters or from upon the lands of another with or without a license, without first having obtained permission from such landowner or person in charge, shall be guilty of a misdemeanor and punished as provided by law."

To each complaint the defendants answered by denying its material allegations. Some of the defendants denied the defendant Sipple's authority to act as their agent, except for the Ossabaw Island Project Foundation. Also, Ossabaw, Inc. maintained that it was not in existence when the foregoing event allegedly took place.

Thereafter, extensive discovery proceedings took place.

Certain defendants filed a motion for summary judgment urging that the defendant Sipple was not acting in their behalf at the time alleged in the complaint. The trial court overruled this motion. Pending appeal from that motion for summary judgment, another such motion was filed by all the defendants upon the merits of the case. In view of this motion the Court of Appeals held that the first appeal was moot. *Citizens & Southern Nat. Bank of Ga. v. Baumgartner*, 123 Ga. App. 462 (181 SE2d 519).

The second motion for summary judgment was sustained by the trial court as to Count 1 of the complaint, relating

to false imprisonment, and denied as to Count 2 of malicious prosecution.

The ruling as to Count 1 was appealed by the plaintiffs and as to Count 2 by the defendants to the Court of Appeals.

That court affirmed the trial court as to both counts in a five to four decision. *West v. Baumgartner,* 124 Ga. App. 318 (184 SE2d 213).

We denied the plaintiffs' application for certiorari on the ruling sustaining the defendants' motion for summary judgment as to Count 1 for false imprisonment.

However, we granted certiorari upon the defendants' application in regard to the denial of their motion as to Count 2 for malicious prosecution.

From the pleadings, discovery proceedings, affidavits and other portions of the record, it appears that the essential facts are not in conflict.

The parties have agreed to be bound by the record in the Court of Appeals in the case of the plaintiff-appellee Edward H. Baumgartner against the above named defendants.

The prosecution complained of here resulted from the plaintiff fishing from a boat in a creek or slough on the eastern side of Ossabaw Island in Chatham County on November 12, 1967. The plaintiff was tried by a jury in the City Court of Savannah on March 25, 1968, and was acquitted.

Ossabaw Island is a privately owned island and neither the plaintiff nor his companions had sought nor obtained permission from the island's owners or the persons in charge to fish there.

While the plaintiff and his companions were fishing in this slough they were observed by the defendant Julian C. Sipple. He ordered them to bring the boat to shore and to give him their names and addresses. He told them they were violating the law and demanded that they leave. They did so.

Subsequently Sipple wrote a letter asking them to meet and talk with him on the hope that legal action against them could be avoided.

On December 19, 1967, Sipple, at the direction of one of the owners of the island, took out a warrant against the plaintiff for violating *Code* § 45-701, which was sworn to by Sipple. The plaintiff was tried by a jury in the City Court of Savannah and was found not guilty.

On December 9, 1955, while Sipple was also acting as attorney for the then owners of this island, H. L. Rowland and George W. Tutan were tried and convicted in the City Court of Savannah for violating this statute by fishing without permission in this slough. Sipple assisted in these prior prosecutions.

Approximately ten days prior to the convictions of Rowland and Tutan on December 9, 1955, Sipple also represented owners of this island when the fishing party of R. L. Saxon was apprehended in this same slough. With Saxon was O. E. Baumgartner, the father of the plaintiff here. However, no prosecution of Saxon or O. E. Baumgartner took place, as evidenced by a letter from William F. Torrey, Sr., to Saxon dated December 27, 1955. Copies were sent to Sipple and O. E. Baumgartner. The letter stated that they would not be prosecuted since Saxon claimed he had permission to fish in the slough and also because the legal question as to whether the slough was open for fishing had not been resolved until Rowland and Tutan were tried and convicted as aforesaid. The letter advised that pursuant to this ruling the slough was not open to the public and it would be necessary to prosecute in the future for illegal fishing.

Predicated upon the foregoing facts, the defendants made their motion for summary judgment as to the malicious prosecution charge. This was denied by the trial court.

In affirming, the Court of Appeals made, in substance, the following holdings: (1) (a) that under the common law the public had a right of fishery in creeks and arms of the sea; (b) that Section 1 of Ga. L. 1902, p. 108 (*Code* § 85-1307) did not grant the exclusive right of fishery in non-navigable tide waters except as to oysters, clams and other shell fish; (2) that belief by prosecutors for crimes

after full knowledge of the facts, that such facts constitute crimes when they do not, does not constitute probable cause; (3) that while prior rulings in a similar prosecution that such facts sufficiently showed guilt may be shown in mitigation of damages and to disprove malice, such rulings do not show probable cause as a matter of law for such prosecution.

It also made further rulings relating to the effect of equivocal answers in discovery procedure, the non-liability of a corporation chartered after the alleged malicious prosecution and certain factors not constituting false imprisonment.

Aside from a procedural question, there is actually only one issue of law necessary to be decided by this court on this appeal; whether the evidence showed that there was no probable cause for the plaintiff's prosecution for illegal fishing.

We first treat the procedural question.

■ The motion by plaintiff-appellee to dismiss the certiorari proceedings is denied.

This motion was predicated upon Rule 37 (j) (1) of the Rules of the Supreme Court, as that rule then existed.

However, on December 2, 1971, this Rule was clarified so as to provide in material part as follows:

"In all cases, (1) where the Court of Appeals has affirmed an order of the trial court denying a motion for a summary judgment, *where no ruling on any issue or question of law is involved,* the Supreme Court will not entertain an application for writ of certiorari." (Emphasis supplied.)

The emphasized language added by that amendment fits the situation in this appeal. All of the rulings involved here are of law.

Therefore we adhere to the grant of the application for certiorari.

■ It is obvious from the rulings of the Court of Appeals that those as to probable cause were decisive in its disposition. In reaching its conclusion that the defendants did not have probable cause for the illegal fishing prosecution of the plaintiff Baumgartner and his companions, it based its

decision upon its construction of the Act of 1902 (Ga. L. 1902, p. 108; *Code* §§ 85-1307, 85-1308 and 85-1309), and the public right of fishery in tidal waters under the common law.

In our view, however, neither a construction of this Act nor a determination of the public's rights under the common law is required. The controlling issue in the malicious prosecution action is whether the plaintiff showed that the defendants had no probable cause *at that time* for prosecuting him for illegal fishing in the slough in question. In this regard, we should be mindful of several principles that govern here.

Our Code provides that a "criminal prosecution, maliciously carried on, and without *any* probable cause, whereby damage ensues to the person prosecuted, shall give him a cause of action." *Code* § 105-801. (Emphasis supplied.)

It also declares that "Want of probable cause shall be a question for the jury, under the direction of the court and shall exist where the circumstances are such as to satisfy a reasonable man that the accuser had *no* ground for proceeding but his desire to injure the accused." *Code* § 105-802. (Emphasis supplied.)

Also, "where the material facts are not in dispute, or only one reasonable inference can be drawn from the evidence, the *court* shall determine whether or not probable cause exists. [Cits.]" *Johns v. Gibson,* 60 Ga. App. 585, 588 (4 SE2d 480). (Emphasis supplied).

Furthermore, "'The burden of proving the want of probable cause is on the *plaintiff'* (*Auld v. Colonial Stores,* 76 Ga. App. 329, 335 (45 SE2d 827)), and he does not in any reasonable sense carry this burden unless he shows by his evidence that, under the facts as they appeared to the prosecutor *at the time of the prosecution,* the prosecutor could have had *no* reasonable grounds for believing the plaintiff to be guilty of the charge for which he was prosecuted. [Cit.]" *Barber v. Addis,* 113 Ga. App. 806 (1) (149 SE2d 833). (Emphasis supplied.)

Finally, and of great significance, is the rule that "In actions for malicious prosecution, the question is not whether the plaintiff was guilty, but whether the defend ant had *reasonable cause to so believe*—whether the circumstances were such as to create in the mind a *reasonable belief* that there was probable cause for the prosecution. [Cit.]" *Tanner-Brice Co. v. Barrs,* 55 Ga. App. 453 (2) (190 SE 676). It is not required that the prosecutor "guarantee a conviction." *Rigdon v. Jordan & Stewart,* 81 Ga. 668 (1a) (7 SE 857).

(a) Applying the foregoing principles to the factual situation here it is clear that the plaintiff did not show that, *at the time of the prosecution,* the defendant had *no* reasonable grounds for believing that he was guilty of the illegal fishing charge.

(1) In the first place, probable cause existed by virtue of the prior construction of the Act of 1902, supra, which had been in effect for many years as the result of rulings by this court and at least one trial court in the Georgia coastal area.

We refer first to *Rauers v. Persons,* 144 Ga. 23 (86 SE 244), decided in 1915. That case turned upon the issue of whether the tidewaters involved were navigable or non-navigable as defined by Section 2 of the Act of 1902 (*Code* § 85-1308), a point which was not dealt with by the Court of Appeals in reaching its decision in the case at bar.

There the plaintiffs sought to enjoin the defendants from fishing in a named inlet. The defendants answered that this was a navigable stream and navigable tidewater and that the public had the right to fish there. Upon the hearing the trial court found that this inlet "was of sufficient depth at mean low tide to permit its navigation with loaded boats in the regular course of trade." Id. p. 24.

Upon review this court referred to what are now Code §§ 85-1307 and 85-1309, as to non-navigable and navigable tidewaters respectively, and affirmed the sustaining of the defense of fishing in navigable tidewaters, notwithstanding

that there was no public terminus at each end of the inlet. It is obvious that the outcome turned upon whether the tidewater was navigable or non-navigable, and that had it been proved that it was non-navigable, the defendants would have had no right to fish there.

This decision is full bench and stands unreversed as the only case of this court on the subject.

We also note that a construction in accord with that one was made by a respected Judge of the Superior Courts of the Eastern Judicial Circuit, Honorable Edwin A. Mc-Whorter, in Evans v. DeLoach, Case No. 6236, Chatham Superior Court, decided in 1969 and unappealed from.

(2) Secondly, there is further probable cause for the prosecution, regardless of whether the tidewater in question was navigable or non-navigable, and independent of the construction of *Rauers v. Persons,* 144 Ga. 23, supra, or the Evans case, supra.

It is the defendants' reliance upon the prior convictions of other persons for illegal fishing. The record shows that charges were instituted against several individuals for violation of the same fishing statute here (*Code Ann.* § 45-701), in the same slough, and that in 1955 they were convicted in the City Court of Savannah. With this as an accomplished fact, Sipple, in 1967, on behalf of the other defendants, had every right to swear out the instant warrant and to assist in the prosecution. We ask: What more probable cause could there be than this?

At the time the prosecution here was instituted the Act of 1902 (*Code* § 85-1307), insofar as the record shows, had never been judicially construed *except* to grant exclusive fishing rights in these tidewaters to the adjacent landowners such as the defendants. Sipple adopted that as their legal position when he swore out the warrant and assisted in the prosecution.

(3) A different result is not required by the language in Section 90 of Ga. Laws, 1955, pp. 483, 527, "provided however, that this *Act* shall not apply to persons while engaged in . . . sport fishing with hook and line . . ." and the fact

that the appellee was engaged in such fishing. (Emphasis supplied.)

The word "Act" is an obvious clerical error occurring in the legislative process, and should read "Section."

The quoted language including "Act" is restricted to Section 90, which relates only to certain fishing in tidal streams which have been posted. It does not relate to the *entire Act,* which purports to be complete and exhaustive as to game and fish. The Act comprises 67 pages with 120 sections. A consideration of the entire Act makes it manifest that the General Assembly did not intend that all of the varied provisions of the Act should not apply to persons while engaged in sport fishing with hook and line.

This patent error, employing the word "Act" instead of "section," was discovered in the codification of this section of the statute in Georgia Code Annotated and was corrected to read, "provided however, that this *Section* shall not apply to persons while engaged in . . . sport fishing with hook and line . . ." *Code Ann.* § 45-711. (Emphasis supplied.)

In this situation the rule is that "It is the duty of the courts, in the interpretation of statutes, to seek diligently to arrive at the legislative intent, and, in order to do so, they should not adopt an arbitrary rule that the legislature intended to make a typographical or clerical error, the result of which would be to make nonsense of the act, and destroy it." *Lamons v. Yarbrough,* 206 Ga. 50 (1) (55 SE2d 551, 11 ALR2d 717).

However, the appellee was not charged with any violation of Section 90 of this Act.

The warrant issued in the instant case recited that he was charged with "Fishing in the waters of another without permission of the owner or person in charge, namely what is known as the slough at Ossabaw Island, Chatham County, Ga. In violation of Sec. 45-701 Ga. Code Ann."

This warrant sufficiently charged the offense recited in Sec. 81, Ga. L. 1955, pp. 483, 523 (*Code Ann.* § 45-701), providing in pertinent part that "Any person who shall fish in the waters or from upon the lands of another with or

without a license, without first having obtained permission from such landowner or person in charge shall be guilty of a misdemeanor and punished as provided by law."

It follows that this warrant did not constitute lack of probable cause.

Upon consideration of the foregoing facts and principles relating to probable cause, we conclude that the Court of Appeals erred in holding that belief by prosecutors for crimes after full knowledge of the facts, that such facts constitute crimes when they do not, does not constitute probable cause. It also erred in holding that prior rulings of guilt in a similar prosecution do not show probable cause as a matter of law for such prosecution.

The authorities relied upon by the Court of Appeals are not applicable here. This is not a case of a mistaken belief that certain facts constitute a crime.

In this appeal the transcending issue is whether the evidence showed a lack of probable cause. Since it did not, the plaintiff's case must fail, regardless of any other issue involved.

Consequently, there is no genuine issue as to any material fact and the defendants were entitled to a judgment as a matter of law.

We therefore conclude that the Court of Appeals erred in affirming the denial of the defendants' motion for summary judgment.

*Judgment reversed. All the Justices concur, except Almand, C. J., and Undercofler, J., who dissent from Division 2 and from the judgment, and Gunter, J., who dissents from Divisions 1 and 2, and from the judgment.*

GUNTER, Justice, dissenting. The writer was not a member of the court when these applications for writs of certiorari to the Court of Appeals were granted. Had I been, my position would have been to deny the applications.

When the Court of Appeals rendered the judgments in these cases, and when the applications for writs of certiorari were filed by the applicants, the rule of this court, 37 (j) (1), was: "Where the Court of Appeals has affirmed an

order of the trial court denying a motion for summary judgment the Supreme Court will *not* entertain an application for the writ of certiorari." On December 2, 1971, this Court amended that rule, and the majority opinion has made the amended rule retroactively applicable in these cases. Granting these applications when proscribed by this court's own rule seems to me to be an act of judicial arrogance, but my view is obviously in the minority on this point. I would hold the amended rule applicable only to judgments rendered by the Court of Appeals after December 2, 1971. Under the rule before December 2, 1971, these applications could not have been granted, and I would now dismiss them as having been granted in violation of this court's rule as it existed when the judgments of the Court of Appeals were entered.

I also concur with the judgments rendered by the Court of Appeals and would affirm them with direction as hereinafter stated.

The record in these cases indicated to me that the defendants in the trial court (hereinafter referred to as the defendants) have, over a period of years, made a concerted effort to prevent the public from using what they contend to be the nonnavigable tidewater area adjacent to their property, and the arrests and prosecutions of the plaintiffs in these cases for trespass was a continuing part of this concerted effort.

A majority of this court has decided that there was probable cause, as a matter of law, on the part of the defendants for the arrests and prosecutions of the plaintiffs, and that the record demanded that the trial judge render summary judgments in favor of the defendants in these cases.

I disagree with the majority.

To me the majority opinion contains its own death wound, namely, "the burden of proving the want of probable cause is on the plaintiff."

Here the defendants made motions for summary judgments, and as I understand the summary judgment rule (*Code Ann.* § 81A-156) the burden is always on the movant (the defendants) and not on the respondent (the plaintiffs).

See in this connection *Sanfrantello v. Sears, Roebuck & Co.,* 118 Ga. App. 205, 206 (163 SE2d 256), wherein the court said: "On motion for summary judgment, the movant has the burden of showing the absence of any genuine issue of material fact, and the opposing party is given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 4 (126 SE2d 442); *International Brotherhood v. Newman,* 116 Ga. App. 590, 592 (158 SE2d 298). The movant 'has this burden even as to issues upon which the opposing party would have the trial burden. And the moving party's papers are carefully scrutinized, while the opposing party's papers, if any, are treated with considerable indulgence.' *Colonial Stores, Inc. v. Turner,* 117 Ga. App. 331, 333 (160 SE2d 672); 6 Moore's Federal Practice (2d Ed.) 2853, § 56.23."

I agree that the burden will be on the plaintiffs in a jury trial to prove the want of probable cause on the part of the defendants for the arrests and prosecutions, but that emphatically is not so in a ruling on a motion for summary judgment. The majority opinion has erroneously transferred the burden rule at a trial before a jury to the summary judgment arena. And such a transfer subtly eats away at our system wherein the jury decides issues of fact between litigants.

In viewing this record the plaintiffs below must be given the benefit of *all reasonable doubts* and *all favorable inferences* that may be drawn from the evidence. The majority opinion does exactly the reverse.

Without reciting details, the record in these cases is, to my mind, full of evidence that will require a jury to determine *probable cause or no probable cause* for the arrests and prosecutions initiated and carried out by the defendants against the plaintiffs. This record certainly does not demand summary judgments for the defendants.

The legal right of the plaintiffs to be where they were apprehended is, to me, beyond question. Sec. 3 of the 1902 Act (Ga. L. 1902, p. 108; *Code* §§ 85-1307—85-1309) says in plain language that the public has the right to be in any

tidewater, *navigable or unnavigable,* for the purposes of passage and the transportation of freight. And to construe that language to mean that the public can be in and transport freight in *all* tidewater but cannot take fish out of it is somewhat incredible. This alone makes an issue for the jury of probable cause or lack of probable cause for the prosecutions.

Also, I should add that I am of the opinion that Sec. 81 of the Act of 1955 (Ga. L. 1955, p. 483), the provision of law pursuant to which the plaintiffs were prosecuted, is not applicable to fishermen fishing in salt water; other sections of the Act are applicable to trepass in salt water areas. And Sec. 90 of the 1955 Act (p. 527) plainly says that the *entire Act* is not applicable to persons sport fishing with hook and line. The mere reading of this language in Section 90 should have raised the least bit of doubt in the mind of the defendant-agent-attorney, the principal actor in the prosecutions on behalf of all of the defendants, as to whether he should swear out warrants and prosecute the plaintiffs for violating Sec. 81 of the Act. It has been necessary for those printing the unofficial Code to change "Act" to "Section" in Sec. 90, and for the majority opinion to interpret the unambiguous word "Act" to mean "Section" in Sec. 90 in order to hold that probable cause existed as a matter of law for the plaintiffs to be arrested and prosecuted under Section 81 of the Act. Arriving at the existence of probable cause in these cases, as a matter of law, by this circuitous route is the epitome of tortuosity.

Finally, the Georgia statute, in our Code as early as 1861, controlling the crucial issue in this case is *Code* § 105-802: "Want of probable cause shall be *a question for the jury,* under the direction of the court, and shall exist where the circumstances are such as to satisfy *a reasonable man* that the accuser had no ground for proceeding but his desire to injure the accused."

This statute is clear and does not need to be construed; the issue is for the jury to decide; the circumstances must be such as to satisfy *a reasonable man*—not a judge or three judges or even seven judges.

And the last decision of this court that I am able to find that is squarely on this point is the case of *Anderson v. Keller*, 67 Ga. 58, decided in 1881. In that case the trial judge had passed on the issue of probable cause, as a matter of law, and granted a nonsuit. On appeal this court said in unmistakable words that still ring loud and clear over a period of nine decades: "it is true that it also appeared that the defendant had been advised by an attorney at law that the warrant would lie, but even if the whole proceeding had been without malice and *with probable cause in the opinion of the judge,* yet he should have sent it to the jury for them to pass upon it, and by their verdict to say whether that was true or not. Judgment reversed."

Having said so much, I now simply say that probable cause or the lack thereof for the prosecutions in these cases was not and is not an issue to be determined by the court, trial or appellate. It is an issue of fact for jury determination.

I would affirm the judgments of the Court of Appeals, directing that this issue be determined by a jury below.

I respectfully dissent.