A99A0611. JENKINS v. DEPARTMENT OF CORRECTIONS.
(518 SE2d 730)

BLACKBURN, Presiding Judge.

Teresa Jenkins, an inmate, appeals from the trial court's order dismissing two counts and granting summary judgment on the third count of her complaint against the Georgia Department of Correc-

tions (the Department). Jenkins contends the trial court erred by: (1) granting summary judgment on her claim of intentional infliction of emotional distress; (2) finding her claim that the Department had violated the Georgia Constitution was precluded by the doctrine of sovereign immunity; and (3) dismissing her claim that the Department violated 42 USC § 1983. For the reasons set forth below, we affirm.

1. "A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Punctuation omitted.) *Urban v. Lemley*, 232 Ga. App. 259 (501 SE2d 529) (1998).

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to Jenkins, the evidence shows that the Department operated the Macon Transitional Center, a less restrictive facility where, in preparation for their release, inmates could participate in center programs and employment in the community. Only those inmates who met certain criteria, based on their incarceration offense and their behavior while incarcerated, were selected by the Department for assignment to the minimum security transitional facility. Accordingly, inmates selected for the transitional facility were required to obey the rules, and, if they abused privileges and failed to follow rules, they could be reassigned to a more secure facility. Unmarried inmates selected for the transi-

tional facility were prohibited from having sexual relationships. Inmates who violated this rule were reassigned to the Georgia Women's Correctional Institute (GWCI), a more restrictive facility.

Additionally, if an inmate were pregnant, Department of Corrections regulations required the Department "[t]o ensure the right of the pregnant inmate to choose whether to continue the pregnancy or to abort [and] [t]o provide guidance on the issues of infant placement and abortion." Pregnant inmates were reassigned to GWCI because the transitional facility did not have appropriate medical facilities.

Jenkins was incarcerated initially at GWCI but was subsequently selected for assignment to the Macon Transitional Center. At the transitional facility, Jenkins was released to work in the community. Through her work, Jenkins became friendly with a man in the community.

In April 1991, the Department learned from another inmate that Jenkins, who was not married, was pregnant. The Department issued a disciplinary report to Jenkins for failing to follow instructions and engaging in sexual activity in violation of the rules. Jenkins was placed in disciplinary confinement for two or three days. This meant she could not leave the facility. As required by department policy, Jenkins was informed of her option to continue or to abort her pregnancy. She was told that Department policy required that pregnant prisoners be returned to GWCI. She was advised that she might be allowed to remain at the transitional facility, should she elect to abort, as she would no longer be pregnant. Jenkins chose to continue her pregnancy. Jenkins was transferred to GWCI for violating Department rules by voluntarily engaging in sexual activities while an inmate. Because of the Department's policy not to retain pregnant inmates at the transitional facility because it did not have appropriate medical facilities, Jenkins' transfer would have occurred in any event. She later miscarried.

On May 1, 1991, a hearing was held on Jenkins' disciplinary report. Jenkins pled guilty to engaging in sexual activity and not guilty to failing to follow directions. Jenkins deposed that she had been involved in a sexual relationship with a man she had met at her work and with another inmate.

At the hearing on these charges, Jenkins disclosed to the Department for the first time, that she had also been raped and contended that her pregnancy was the result of such rape. Jenkins said the rape occurred when, afraid that she would be late to work, she accepted an unauthorized ride from a male friend in the community. He was not on Jenkins' approved list for transportation. Her friend drove to an isolated spot and raped her. Jenkins made no criminal report of her rape. Jenkins deposed that following the rape, she was only five or ten minutes late for work, and that she did not tell anyone that she

had been assaulted. Neither had she disclosed her rape to the investigator when the State determined she was pregnant. Following the hearing, she was sentenced to 14 days isolation and 30 days loss of store privileges. On review by the superintendent the next day, the discipline sentence was rescinded on technical grounds, and no new punishment was ever imposed.

Jenkins filed an action under the Georgia Tort Claims Act and 42 USC § 1983, contending that she was punished because she elected not to abort her pregnancy. On the Department's motions for summary judgment and to dismiss the complaint, the trial court found that the actions of the Department did not, as a matter of law, support Jenkins' claim of intentional infliction of emotional distress.

> Four elements must be present to support a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe.

(Punctuation omitted.) *Whalen v. Isaacs*, 233 Ga. App. 367, 368 (2) (504 SE2d 214) (1998). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991).

Jenkins alleges that, because of her decision to continue her pregnancy, the Department returned her to the higher security prison, where inmates did not enjoy the privileges of the transitional facility, and subjected her to discipline. She contends this conduct was egregious and outrageous. However, construing the evidence most favorably to Jenkins, there is no evidence that she was punished for choosing to continue her pregnancy.

The evidence is that Jenkins was placed in confinement and transferred to GWCI for violating the rules at the transitional facility, specifically for engaging in sexual activity. Initially, Jenkins' pregnancy was evidence that she had engaged in sexual activity[1] in violation of the rules. Then, Jenkins pled guilty to engaging in sexual activity at her disciplinary hearing. Jenkins' transfer to GWCI was consistent with the Department's practice to discipline inmates who violated the rules at the transitional facility. Furthermore, her transfer was consistent with the Department's practice to transfer pregnant inmates to a prison facility which could provide medical care.

---

[1] Jenkins initially did not tell the Department that her pregnancy was the result of a rape.

Jenkins points to the statements of the Department employees as evidence that the Department punished her for choosing to continue her pregnancy; however, it is undisputed that the employees were required to inform Jenkins of her options either to continue the pregnancy or to have an abortion. There is no evidence that the employees were threatening. Although Jenkins has presented circumstantial evidence that some inmates who chose to abort their pregnancies were transferred back to the transitional facility, that evidence does not establish that Jenkins' transfer was punishment for her decision to continue the pregnancy. "Circumstantial evidence has no probative value in establishing a fact when such evidence is consistent with direct and unimpeached evidence showing the nonexistence of such a fact." (Citation and punctuation omitted.) *Whalen,* supra at 368. See *MARTA v. Mehretab,* 224 Ga. App. 263, 265-266 (1) (480 SE2d 310) (1997).

Stripped of the allegation that the Department disciplined Jenkins as punishment for her refusal to abort her child, none of the Department's acts (placing her in disciplinary confinement or transferring her to GWCI) was egregious or outrageous conduct which would support a claim for intentional infliction of emotional distress. The transfer is not egregious conduct as the Department has the right to make prison to prison transfers. See *Meachum v. Fano,* 427 U. S. 215 (96 SC 2532, 49 LE2d 451) (1976). Furthermore, the Department has the right to impose disciplinary action against inmates who violate rules, and it may use isolation as a punishment for infractions of correctional rules and regulations. OCGA § 42-5-58 (b); see *Sandin v. Connor,* 515 U. S. 472 (115 SC 2293, 132 LE2d 418) (1995). Under these circumstances, the Department's acts do not support Jenkins' claim for intentional infliction of emotional distress.

2. The facts do not support Jenkins' claim that the Department violated her rights under the Georgia Constitution. Jenkins' constitutional claim also is based on her allegation that she was punished for choosing to continue her pregnancy. As discussed in Division 1, supra, Jenkins failed to support this allegation with evidence. The Department acted within its authority and consistent with its general policy. The trial court found that Jenkins' claim of constitutional violations was precluded by the doctrine of sovereign immunity; however, pretermitting the issue of sovereign immunity, the evidence does not support Jenkins' claim that the Department violated her constitutional rights. "[A] judgment right for any reason will be affirmed." *Southern Electronics Distrib. v. Anderson,* 232 Ga. App. 648, 650 (2) (502 SE2d 257) (1998). The trial court properly dismissed the claim.

3. The trial court properly granted the Department's motion to dismiss the § 1983 claim. "*Will v. Michigan Dept. of State Police,* 491

U. S. 58 (109 SC 2304, 105 LE2d 45) (1989) holds that § 1983 claims cannot be asserted against a state agency or state officials acting in their official capacity." *Professional Practices Comm. v. Brewer*, 219 Ga. App. 730, 731 (466 SE2d 651) (1995). See *Dollar v. Olmstead*, 232 Ga. App. 520, 522 (1) (502 SE2d 472) (1998) (error not to grant summary judgment to Commissioner of the Georgia Department of Human Resources because § 1983 claims cannot be asserted against a state agency or state officials acting in their official capacity). "[T]he [Department] is not a 'person' against whom a § 1983 claim for damages will lie." *State Bd. of Ed. v. Drury*, 263 Ga. 429, 434 (2) (437 SE2d 290) (1993).

*Judgment affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 28, 1999.

*Bondurant, Mixson & Elmore, Jeffrey O. Bramlett, Joshua F. Thorpe, David G. Brackett, Robert W. Cullen, John A. Pickens*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, John C. Jones, Loretta L. Pinkston, Senior Assistant Attorneys General, Ralph W. Ellis, David B. Fife, Assistant Attorneys General,* for appellee.