S06A0229. COUCH v. PARKER et al.
S06A0261. MADDOX et al. v. PARKER et al.
(630 SE2d 364)

CARLEY, Justice.

Quebell Parker and others (Appellees) own residential property in Newton County. A disposal facility owned and operated by J. Wayne Maddox and Scrap Metal Processors, Inc. (Owners) is located on the adjoining tract. Carol Couch, in her capacity as Director of the Environmental Protection Division (EPD) of the Department of Natural Resources, determined that Owners' disposal facility is the source of contamination to Appellees' property. Acting pursuant to her authority under the Hazardous Site Response Act (HSRA), OCGA § 12-8-90 et seq., the Director gave Owners the opportunity to perform voluntary corrective action in accordance with her proposed

administrative consent orders. See OCGA § 12-8-96 (a). The Director's proposed orders addressed, in part, the contamination of Appellees' property. Although Appellees objected that the terms were inadequate to repair the damage done to their property, the Director and Owners executed the necessary documents to effectuate the orders.

Claiming that they were adversely affected by the consent orders, Appellees sought a hearing before an Administrative Law Judge (ALJ) pursuant to OCGA § 12-2-2 (c) (2). The ALJ concluded that Appellees lacked standing, because the Director had not yet sought to enforce the orders against Owners. The ALJ based that ruling on OCGA § 12-2-2 (c) (3) (B), which provides, in relevant part, that "[p]ersons are not aggrieved or adversely affected by . . . an order of the [D]irector . . . unless or until the [D]irector seeks to . . . enforce the order . . . ."

Pursuant to OCGA § 50-13-19, Appellees then sought judicial review of the ALJ's adverse ruling on the issue of standing. After conducting a hearing, the superior court concluded that Appellees were aggrieved or adversely affected by the consent orders, since they contend that the clean-up measures approved by the Director are inadequate to address the extent and source of the pollution to their property. The superior court further concluded that OCGA § 12-2-2 (c) (3) (B) could not bar Appellees' pursuit of an administrative appeal because that provision unconstitutionally violates their right of access to the courts and their due process right to seek redress for their grievances. Therefore, the superior court reversed the ALJ on the standing issue, and remanded the case for an administrative hearing on the merits of Appellees' challenge to the consent orders.

The Director and Owners filed separate applications for discretionary appeal, and we granted both applications in order to consider the superior court's holding that OCGA § 12-2-2 (c) (3) (B) is unconstitutional as applied to Appellees. Because of the identity of the constitutional issue, the two cases are hereby consolidated for disposition in this single opinion.

1. In part, the superior court based its conclusion that OCGA § 12-2-2 (c) (3) (B) is unconstitutional on Appellees' right under the Georgia Constitution to unfettered access to the courts. However, "this Court has held that 'Art. I, Sec. I, Par. XII [of our State Constitution] is a "right of choice" (between self-representation and representation by counsel) provision, and not an "access to the courts" provision.' [Cit.]" *Santana v. Ga. Power Co.*, 269 Ga. 127, 129 (4) (498 SE2d 521) (1998). Thus, there is no express constitutional "right of access to the courts" under the Georgia Constitution. *Nelms v. Georgian Manor Condo. Assn.*, 253 Ga. 410, 413 (3) (321 SE2d 330) (1984). Compare *Howard v. Sharpe*, 266 Ga. 771, 772 (1) (470 SE2d

678) (1996) (discussing prisoners' federal constitutional right of meaningful access to seek habeas corpus). Moreover, Appellees do not seek access to the courts, but the right to initiate an administrative appeal. Therefore, even if a constitutional "right of access to the courts" provision did exist, it would not be applicable here.

The superior court also relied on Appellees' right of due process. See Art. I, Sec. I, Par. I of the Ga. Const. of 1983. This state has long recognized that "[t]he right to be heard in matters affecting one's life, liberty, or property is one of the essential elements of due process of law. [Cits.]" *Southern R. Co. v. Town of Temple*, 209 Ga. 722, 724 (1) (75 SE2d 554) (1953). However, that right is not absolutely unrestricted.

> The power of the legislature to create, modify or abolish rights to sue has been clearly and repeatedly recognized both by the U.S. Supreme Court and by this Court. [Cits.] The enactment of a statute delineating or, indeed, even abolishing a cause of action before it has accrued, deprives the plaintiff of no vested right. [Cit.]

*Love v. Whirlpool Corp.*, 264 Ga. 701, 705 (2) (449 SE2d 602) (1994). "States are free to create immunities and to eliminate causes of actions, and that legislative determination provides all the process that is due. [Cit.]" *Santana v. Ga. Power Co.*, supra. Thus, due process recognizes a citizen's unfettered right to defend his or her life, liberty, or property in accordance with those limitations constitutionally established by the General Assembly.

The authority of the General Assembly to establish the permissible parameters of the due process right to be heard in matters affecting life, liberty or property extends to standing to maintain a claim. "The issue of standing encompasses several important elements, including . . . statutes of the General Assembly . . . ." *Bowers v. Bd. of Regents of the Univ. System of Ga.*, 259 Ga. 221, 222 (378 SE2d 460) (1989). Thus, Appellees do not have a constitutional due process right to pursue any claim, which is paramount to the General Assembly's constitutional authority to create, modify or abolish the right to sue.

OCGA § 12-2-2 (c) (3) (B) does not bar Appellees from seeking redress in the courts for the injury they allegedly sustained. They have an unrestricted right to file suit against Owners and others who may be responsible for the contamination of the property. In fact, it appears that Appellees have exercised that right. See *Parker v. Scrap Metal Processors*, 386 F3d 993 (11th Cir. 2004). However, the Director is not responsible for the contamination of Appellees' property, and

the exercise of her authority under the HSRA is intended to ameliorate the pollution resulting from Owners' disposal facility. Even so, OCGA § 12-2-2 (c) (3) (B) does not prevent administrative review of the Director's orders. Under its unambiguous terms, the statute applies indiscriminately and provides only that no person is considered to be aggrieved by an order entered by the Director pursuant to the HSRA "unless or until" she seeks to enforce that order. Thus, OCGA § 12-2-2 (c) (3) (B) is a legislative limitation on standing to appeal the Director's order, not an absolute bar to pursuit of an administrative remedy.

Appellees wish to mount a challenge to the adequacy, rather than the underlying enforceability, of the consent orders, and they argue that the statutory limitation on standing deprives them of the opportunity to compel the Director to consider imposing additional and more comprehensive remedial measures to abate the contamination of their property. In effect, Appellees contend that, notwithstanding OCGA § 12-2-2 (c) (3) (B), they have an overriding right to a review of the Director's exercise of her administrative authority to ameliorate the contamination caused by Owners' disposal facility.

The purpose of the HSRA is not to make Appellees whole. The General Assembly enacted the statute in furtherance of this state's "responsibility to protect the public health, safety, and well-being of its citizens and to protect and enhance the quality of its environment . . . ." OCGA § 12-8-91 (a). To that end, the Director is designated as the official who "shall issue all orders . . . provided for in the laws to be enforced by the [EPD]." OCGA § 12-2-2 (c) (1). Thus, insofar as the adequacy of the ameliorative terms of HSRA consent orders is concerned, the Director has sole and complete authority. Prior to the Director's formal entry into the consent orders, Appellees and any other affected parties were entitled to comment on the proposed terms and to suggest additions or deletions. Once the Director has made her final determination, however, the adequacy of the remedial measures imposed on the Owners is established and, pursuant to OCGA § 12-2-2 (c) (3) (B), standing to seek administrative review is limited to those who wish to attack the enforceability of the orders according to their terms.

Thus, the flaw in Appellees' claim of entitlement to challenge the sufficiency of the consent orders is that the very legislative intent underlying OCGA § 12-2-2 (c) (3) (B) is to preclude such attacks on the Director's exercise of her administrative authority to determine the scope of remedial measures set forth in consent orders issued under the HSRA. This limitation on administrative review is justified as an effort by the General Assembly to facilitate the expeditious completion of those corrective and remedial measures ordered by the Director. See *In re Forstmann & Co.*, 1996 WL 226074 (Ga. Bd. Nat. Res.).

The Director's exercise of her authority to protect the public by requiring corrective action under the HSRA is not subject to the delay occasioned by administrative review initiated by one who asserts the insufficiency of her orders to address a private claim against the actual polluters.

Until they obtain a full satisfaction, Appellees are authorized to pursue all available legal remedies against those who are responsible for polluting their property. OCGA § 9-2-4. Insofar as administrative remedies are concerned, however, Appellees do not have standing to appeal the Director's consent orders unless and until she seeks to enforce them. In reaching the contrary conclusion, the superior court relied on Appellees' non-existent constitutional right of unfettered access to the courts. Accordingly, the superior court erroneously reversed the order of the ALJ and remanded for a hearing on the merits of Appellees' challenge to the adequacy of the Director's consent orders.

2. Remaining enumerations of errors are moot.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 25, 2006 —
RECONSIDERATION DENIED JUNE 12, 2006.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, Assistant Attorney General*, for Couch.

*Stack & Associates, Donald D. J. Stack, Martin A. Shelton, Holly P. Cole*, for Parker et al.

*Epstein, Becker & Green, Barbara H. Gallo, Scott E. Hitch, Daniel H. Sherman IV*, for Maddox et al.