## A08A0542. KELSO et al. v. BAXTER.
(665 SE2d 381)

ADAMS, Judge.

Edward B. and Beverly H. Kelso filed a petition for declaratory judgment, seeking a determination that they were entitled to the exclusive rights to maintain a dock on the Sapelo River.[1] The suit followed a longstanding dispute between the Kelsos and John S. Baxter regarding the rights to maintain and use the dock. Baxter opposed the Kelsos' claim of rights on the grounds of laches and prescription. After originally ruling in favor of the Kelsos on their petition, the trial court reversed its decision on motion for new trial, finding in favor of Baxter, and the Kelsos appeal.

The evidence shows that B. P. Harris originally purchased the

---

[1] This appeal was originally filed in the Supreme Court of Georgia, which transferred it to this Court.

waterfront property at issue in 1959, which property was designated as Lots 3 and 4, Block 1, in the Pine Harbor subdivision in the Township of Fairhope. Brice Durrence, Baxter's uncle, owned title to Lots 11 and 12 in the same subdivision. In 1982, Durrence constructed a dock on the Sapelo River opposite Lot 4, after obtaining the necessary permits from the Department of Natural Resources and the Army Corps of Engineers. Harris apparently did not object during the dock's construction and was present when Baxter assisted his uncle in building the dock. Durrence paid the entire cost of the construction.

In December 1985, Harris conveyed Lot 4 and a portion of Lot 3, without reservation or restriction, to the Kelsos. Baxter purchased Lots 11 and 12 from Durrence in 1997, and at the time of the sale, Durrence executed a bill of sale conveying his interest in the dock to Baxter.[2] Subsequently, Durrence's Army Corps of Engineers permit and the DNR license were transferred to Baxter and no evidence exists that the permits have ever been revoked or rescinded.

The dock at issue is not directly contiguous to either Baxter's or the Kelsos' land. Edgewater Boulevard separated the marsh and Sapelo River from all properties in the subdivision. Baxter's land lies to the west of the Kelsos' property, and faces Mallow Avenue on the south. The Kelsos' land also is bounded on the south by Mallow Avenue and the deeds in the Kelsos' chain of title expressly provide that the property is bounded on the East by Edgewater Boulevard. The dock sits across Edgewater Boulevard from the Kelsos' land and extends across the marsh from a portion of Edgewater Boulevard to the Sapelo River. Although the road has eroded over the years, somewhere between two and one-half to eight feet of roadway remains, with approximately four feet of road separating the Kelsos' land from the dock. Thus, Baxter's land is separated from the dock by both the Kelsos' property and Edgewater Boulevard.

Neither party, therefore, owns the land upon which the dock is constructed or the land to which the dock is attached. And the Kelsos do not claim ownership of such property, acknowledging that the dock and causeway are located on tidal waters, which are owned by the State. Rather, they claim that as adjacent property owners they have rights in the land to the low water mark of the river under OCGA §§ 44-8-5 and 44-8-7.

The case was placed on the non-jury calendar, and the trial court ordered the parties to submit briefs, but Baxter failed to do so. The

---

[2] Baxter originally bought this property along with Kevin Odell, but later bought out Odell's interest in the land and the dock. Accordingly, this opinion will refer to Baxter as the sole owner of Lots 11 and 12 and will consider only his rights vis-à-vis the dock.

trial court subsequently issued an order declaring that the Kelsos had the exclusive legal right to maintain a dock on their waterfront property and enjoining Baxter from interfering with the Kelsos' use of the dock and from trespassing on the Kelsos' property.

The Kelsos testified that following this ruling they applied for and were granted a license by the DNR to repair, rebuild and extend the remnants of the dock, which had fallen into disrepair, but they did not produce a copy of this license. The Kelsos testified that they made a number of repairs and began using the dock. There is no evidence, however, that prior to that time either Harris or the Kelsos had made any contribution to the building, maintenance or upkeep of the dock. In the interim, Baxter filed a motion for new trial, requesting that the trial court vacate its previous order. Following a hearing, the trial court vacated its original order and ruled in favor of Baxter.

The trial court found that the Kelsos failed to establish that their claim fell within the terms of OCGA §§ 44-8-5 and 44-8-7, which grants adjacent landowners rights in navigable streams and tidewaters. The trial court determined that the term "adjacent" under these statutes meant "abutting" or "contiguous to," and because the Kelsos' land was separated from the marsh by the remaining section of Edgewater Boulevard, it did not fall within that definition. The court also found that OCGA § 44-8-7 was passed for a limited purpose and did not address the issue of who held rights to the dock, citing *State v. Ashmore*, 236 Ga. 401 (224 SE2d 334) (1976). The court found that the state owned the land at issue, and it had the authority to grant Durrence, and later Baxter, the right to build and maintain the dock. Lastly, the trial court determined that giving the Kelsos the right to the dock would be a form of unjust enrichment as they concede that Durrence paid the cost of building and maintaining the dock. The Kelsos contend that these holdings were in error.

Under OCGA § 44-8-5 (b), "[t]he rights of the owner of lands which are adjacent to navigable streams extend to the low-water mark in the bed of the stream." The Supreme Court of Georgia held in 1902, however, that the language in this statute does not apply to tidewaters, such as the marshland at issue here.[3] *Johnson v. State*, 114 Ga. 790, 791-792 (1) (40 SE 807) (1902). That same year the legislature adopted what is now OCGA § 44-8-7 (Ga. L. 1902, p. 108, §§ 2, 3), primarily in response to the *Johnson* decision. *State v. Ashmore*, 236 Ga. at 410 (III). That statute provides that

---

[3] We note that the Georgia General Assembly has defined "tidewaters" to mean "the sea and all rivers and arms of the sea that are affected by the tide, where the tide rises and falls, which are capable of use for fishing, passage, navigation, commerce, or transportation. . . ." OCGA § 52-1-3 (4). See Protection of Tidewaters Act, OCGA §§ 52-1-1 to 52-1-20.

[f]or all purposes, including, among others, the exclusive right to the oysters and clams but not to include other fish therein or thereon, the boundaries and rights of the owners of land adjacent to or covered in whole or in part by navigable tidewaters, shall extend to the low-water mark in the bed of the water.[4]

In *Ashmore*, the Supreme Court of Georgia fully analyzed the history behind OCGA § 44-8-7 and determined that the statute granted landowners adjacent to a tidewater "something less than title," and, in fact, granted them "nothing but the right to plant, cultivate and harvest oysters and clams." 236 Ga. at 413 (III). The Court concluded that this right is merely a privilege or a license, and "the State [retains] fee simple title to the foreshore[5] in all navigable tide-waters." Id.[6]

As we are bound by the Supreme Court's interpretation of OCGA §§ 44-8-5 and 44-8-7, we must agree with the trial court that nothing in those statutes grants the Kelsos a superior right to construct a dock over the marshland opposite their property. Thus we need not reach the issue of whether the Kelsos were adjacent landowners under OCGA § 44-8-7.

And "as the state agency designated to manage the tidelands, DNR may determine the appropriate method by which to apportion use of the state's property." *Dorroh v. McCarthy*, 265 Ga. 750, 751 (2) (462 SE2d 708) (1995). That includes the authority to issue revocable licenses affecting the tidewaters in accordance with applicable law. *Rolleston v. State*, 245 Ga. 576, 581 (5) (266 SE2d 189) (1980).[7] In this instance, the DNR issued a license to Durrence to construct and maintain the dock. The agency transferred that license to Baxter when he purchased Durrence's property.

As the parties claiming rights in the dock, the Kelsos bear the burden of proof of establishing those rights. See generally *Southerland v. Southerland*, 278 Ga. 188, 189 (1) (598 SE2d 442) (2004). Baxter presented prima facie evidence that he had the right to maintain the dock through the bill of sale and the transfer of the DNR license. The Kelsos failed to counter that proof with evidence

---

[4] The parties do not dispute that this portion of the Sapelo River and the surrounding marsh would be considered a navigable tidewater. OCGA § 44-8-7 (a).

[5] "The foreshore is the strip of land that lies between the high and low water marks and that is alternately wet and dry according to the flow of the tide." (Punctuation and footnote omitted.) *Dorroh v. McCarthy*, 265 Ga. 750, 751 (1) (462 SE2d 708) (1995).

[6] See also OCGA § 52-1-2 (1992) (State holds title to all tidewater beds in Georgia except where private party can trace title to valid Crown or state grant).

[7] See also OCGA § 50-16-61 (Governor has general supervision authority over the property of the State).

establishing their own right in the dock. They have not proven that the issuance of Durrence's original license or its later transfer to Baxter violated any law or regulation, nor have they established that the license has been revoked or cancelled. And although they assert that they obtained their own DNR license to the dock, they failed to introduce that license into evidence. Because the Kelsos failed to carry their burden of establishing their rights in the dock, we affirm the trial court's order granting Baxter's motion for new trial.

Nothing in *Dorroh v. McCarthy*, 265 Ga. at 751 (1), upon which the Kelsos rely, changes this conclusion. In that case one riparian[8] owner attempted to enjoin a neighboring riparian owner from constructing a dock in tidal waters under a DNR license. The Supreme Court found that nothing in OCGA § 44-8-7 prevented the DNR from devising an equitable approach for allocating access among riparian owners, and affirmed the denial of the injunction. Id. at 751 (2), (3). While that opinion addressed the relative rights among equally-situated riparian owners for new dock construction, it does not address the situation in this case, where one property owner claims rights in a pre-existing dock built by the predecessor in title of an adjoining property owner who holds the current license to maintain the dock.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 10, 2008 — 

*Donald O. Nelson*, for appellants.
*Hugh J. McCullough*, for appellee.

---

[8] A riparian owner "historically was defined as one who owns land on the bank of a river or stream. . . . Current usage, however, makes 'riparian' an acceptable term for describing land that abuts either rivers or lakes." *Dorroh v. McCarthy*, 265 Ga. at 751 (1).