A08A0065. HITCH et al. v. VASARHELYI et al.
(691 SE2d 286)

DOYLE, Judge.

This appeal arises from William and Lucy Hitch's attempt to challenge a revocable license to build a dock on State property granted by the Georgia Department of Natural Resources ("DNR") to the Hitches' neighboring landowner, Jane Britt Vasarhelyi. This Court originally affirmed the trial court's dismissal of the Hitches' claims based on lack of standing,[1] and the Supreme Court of Georgia reversed that judgment, holding that the Hitches had standing to challenge the license.[2] The Supreme Court did not address the question of whether the trial court properly dismissed the Hitches' complaint for failure to state claims for (1) declaratory judgment and mandamus, (2) unconstitutional taking, and (3) denial of due process and equal protection.[3] Because we agree with the trial court's dismissal, we affirm.

---

[1] See *Hitch v. Vasarhelyi*, 291 Ga. App. 634, 636-637 (1) (662 SE2d 378) (2008).

[2] See *Hitch v. Vasarhelyi*, 285 Ga. 627, 630 (680 SE2d 411) (2009).

[3] Based on our analysis herein, we pretermit whether the Hitches' claims were barred by sovereign immunity. See *Jenkins v. Dept. of Corrections*, 238 Ga. App. 336, 340 (2) (518 SE2d 730) (1999) (pretermitting application of sovereign immunity, affirming dismissal on the merits, and noting that "a judgment right for any reason will be affirmed") (punctuation omitted); *Hill v. McClure*, 171 Ga. App. 588, 588-589 (3) (320 SE2d 562) (1984) (pretermitting sovereign immunity issue and finding the grant of summary judgment proper on the merits).

The factual and procedural history is as this Court summarized in its prior opinion:

According to the Hitches, in 2003, Vasarhelyi applied for a permit to build a dock extending from her property over State-owned tidewater beds and marsh lands. Vasarhelyi apparently was required to seek authorization from the Army Corps of Engineers. In November 2003, the Corps issued a "Joint Public Notice" regarding Vasarhelyi's application, which invited interested persons to request a public hearing on the proposed project. The Hitches, who own property that adjoins Vasarhelyi's land, wrote to the Corps, expressing their objections to the construction of the dock and requesting a hearing. The Corps subsequently learned that [DNR] had not approved the dock, and it denied Vasarhelyi's application without holding a hearing.

Vasarhelyi ultimately obtained a revocable license from the State of Georgia to construct the dock. Although several designs were proposed, the Coast Guard objected to a straight dock, and Vasarhelyi received permission to build a "dog leg" shaped dock. In October 2004, the Hitches filed a "Petition for Hearing," seeking an administrative hearing with the Office of State Administrative Hearings ("OSAH") in which they could challenge the dock permit. The State, however, responded that it would not forward the petition to OSAH since, with respect to the management of State tidelands, [DNR] acts pursuant to a delegation of authority from the Governor, who is exempt from the Georgia Administrative Procedures Act [("APA")].

On January 13, 2005, the Army Corps of Engineers sent the Hitches a letter informing them that the State had approved Vasarhelyi's request for a dock permit and that the Corps was thus re-processing the application. The Hitches were informed that if they still wanted to request a hearing, they would need to do so before January 27, 2005. There is no evidence that the Hitches sought a hearing. Instead, they filed suit in superior court against Vasarhelyi and the State alleging that, if Vasarhelyi constructed the dock, it would interfere with their ownership rights as the dock would "impair and impinge upon their view of the marsh and Skidaway River." The Hitches also alleged that construction of the dock "would . . . severely hamper the ability of the Hitches or their successors in interest to build a dock" on their property and would diminish the value of their property. The complaint contained numerous causes of

action, including claims for: (1) declaratory judgment; (2) mandamus; (3) "unconstitutional taking"; (4) "regulatory taking and regulatory denial of due process"; (5) denial of due process; (6) "issuance of permit . . . contrary to the public interest"; (7) the State's exceeding its "legal and equitable authority, considering improper factors, and failing to act correctly and equitably in issuing the subject permit/license"; and (8) an equal protection violation.[4]

The State moved to dismiss the complaint, which motion was granted by the trial court on the grounds that the Hitches lacked standing, that the claims were barred by sovereign immunity, and that the Hitches had failed to state a claim for which relief could be granted. This Court affirmed the trial court's ruling with respect to standing and the Supreme Court of Georgia reversed, leaving the question of the correctness of the dismissal pending in this Court.

1. The Hitches contend that the trial court erred in dismissing their claims seeking (i) declaratory judgment that they were entitled to a hearing before an administrative law judge ("ALJ") under the APA, and (ii) mandamus compelling DNR to transfer the licensing decision to OSAH for a hearing by an ALJ. However, the Hitches identify no statutory authority for such a hearing, and we discern no reversible error.

The Hitches' claims for declaratory judgment and mandamus arise from DNR's denial of their petition for a formal hearing pursuant to DNR rules authorizing such petitions in "contested cases."[5] The DNR rules incorporate the APA definition of the term "contested case,"[6] which is defined by the APA as "a proceeding, including, but not restricted to . . . licensing, in which the legal rights, duties, or privileges of a party *are required by law to be determined by an agency after an opportunity for hearing.*"[7]

The Hitches argue that the legal requirement for an opportunity for hearing in this case is contained in the Coastal Marshlands Protection Act, which provides:

> Any person who is aggrieved or adversely affected by

---

[4] (Punctuation omitted.) *Vasarhelyi*, 291 Ga. App. at 634-635. The Hitches also alleged causes of action for trespass and nuisance, but they subsequently dismissed these claims.

[5] DNR rules provide that ALJs will hear contested cases challenging DNR actions arising under certain statutory schemes. See Ga. Comp. R. & Regs. rr. 391-1-2-.02 & 391-1-2-.03.

[6] Ga. Comp. R. & Regs. rr. 391-1-2-.01 (h) & 391-1-2-.02 (1). The APA provides that "[i]n addition to any other requirements imposed by common law, constitution, statutes, or regulations: (1) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. . . ." OCGA § 50-13-13 (a).

[7] (Emphasis supplied.) OCGA § 50-13-2 (2).

any order or action of the [Coastal Marshlands Protection] committee shall, upon petition within 30 days after the issuance of such order or the taking of such action, have a right to a hearing before an [ALJ] appointed by the board. The hearing before the [ALJ] shall be conducted in accordance with [the APA]. . . .[8]

Based on this language, the Hitches assert that because they are adversely affected by the license granted to Vasarhelyi, they are entitled to a hearing before an ALJ. However, as correctly noted by DNR, the Coastal Marshlands Protection Act explicitly states that its provisions do not apply to certain private docks built "exclusively for the noncommercial use of the owner or his or her invitees," as is the dock planned here.[9] Therefore, the Coastal Marshlands Protection Act provides no authority for review by an ALJ of the decision to grant the revocable license to Vasarhelyi.[10] The license was not granted in accordance with a particular licensing or permitting scheme; rather, it addressed the request by a private property owner to build a dock on State land, and it was granted pursuant to DNR's authority to manage State land. "[A]s the [S]tate agency designated to manage the tidelands, DNR may determine the appropriate method by which to apportion use of the [S]tate's property. That includes the authority to issue revocable licenses affecting the tidewaters in accordance with applicable law."[11]

Further, we note that Vasarhelyi pursued a parallel permitting process required by the U. S. Army Corps of Engineers. That process required DNR's concurrence that Vasarhelyi's application was consistent with Georgia's Coastal Management Program.[12] With respect to DNR's statement in its letter issuing the license that DNR concurred with Vasarhelyi's consistency certification in her application to the Army Corps of Engineers,[13] the Hitches cite no other

---

[8] OCGA § 12-5-283 (b).

[9] OCGA § 12-5-295 (7). We note that the license explicitly stated that it did not relieve Vasarhelyi "from obtaining any other required federal, State or local permits," and the license was premised on the stated assumption that the lands were under the control of the State. We do not and need not opine on what other State or federal regulatory schemes address the activity licensed here.

[10] Compare, e.g., OCGA § 12-2-2 (c) (2) (A) ("Any person who is aggrieved or adversely affected by any order or action of *the director [of the Environmental Protection Division* within DNR] shall, upon petition to the director within 30 days after the issuance of such order or the taking of such action, have a right to a hearing before an [ALJ] of the [OSAH]. . . .") (emphasis supplied).

[11] (Punctuation omitted.) *Kelso v. Baxter*, 292 Ga. App. 663, 666 (665 SE2d 381) (2008) (citing *Dorroh v. McCarthy*, 265 Ga. 750, 751 (2) (462 SE2d 708) (1995)).

[12] See 15 CFR § 930.1 et seq.

[13] Aside from requesting a formal hearing before an ALJ, we note that public notice of the

authority, and we have found none, requiring a formal hearing before an ALJ to appeal such an action by DNR.[14] Accordingly, we discern no basis for a declaratory judgment or the mandamus relief they seek.[15]

2. The Hitches also contend that the trial court erred in dismissing their claims for unconstitutional taking of property without just compensation. We disagree.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.' "[16] Moreover,

> [a]s the United States Supreme Court recognized in *Lingle v. Chevron U.S.A., Inc.*,[17] government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster — and that such regulatory takings may be compensable under the Fifth Amendment. Regulations that fall short of eliminating property's beneficial economic use may still effect a taking, depending upon the regulation's economic impact on the landowner, the extent to which it interferes with reasonable investment-backed expectations, and the interests promoted by the government action.[18]

The Hitches' takings claims turn on their allegation that their property has been diminished in value by DNR's issuance to their neighbor of a revocable license to build a private dock. However, even assuming a legally cognizable economic impact, the Hitches' complaint has failed to show how the mere issuance of a license to construct a private dock on State land resulted in a taking of their property by the State for public use. The State is neither construct-

---

permit application was made, and the Hitches provided comments to DNR pursuant to the public notice. Further, the Hitches are participating in the Army Corps of Engineers' federal permitting process, which has been stayed as a result of this litigation.

[14] See *Drummond v. Fulton County Dept. of Family &c.*, 237 Ga. 449, 456 (3) (228 SE2d 839) (1976) ("Since there is thus no 'contested case' within the meaning of the APA, the trial court did not err in failing to rule that such a procedure was necessary."), overruled on other grounds by *Boozer v. Higdon*, 252 Ga. 276, 277 (1) (313 SE2d 100) (1984).

[15] See *Thomason v. Fulton County*, 284 Ga. 49, 50 (1) (663 SE2d 216) (2008) ("The extraordinary writ of mandamus will not lie unless the petitioner seeking it has a clear legal right to have the act performed. The law must not only authorize the act be done, but must require its performance.") (punctuation omitted).

[16] (Citation omitted.) *Lingle v. Chevron U.S.A. Inc.*, 544 U. S. 528, 536 (II) (A) (125 SC 2074, 161 LE2d 876) (2005).

[17] Id. at 536-539.

[18] (Citation and punctuation omitted.) *Mann v. Ga. Dept. of Corrections*, 282 Ga. 754, 756-757 (1) (653 SE2d 740) (2007).

ing nor maintaining the private dock. As the Supreme Court of Georgia held in *Stanfield v. Glynn County*,[19] a county was not liable for inverse condemnation or taking merely by virtue of its approval "of the construction of [a] waste transfer facility and its issuance of building permits" to a private owner and operator.[20] We find that logic to be persuasive in this case because the revocable license was granted to Vasarhelyi, a private party, solely for the lawful construction and use of a private dock by Vasarhelyi.[21] Therefore, the trial court did not err in dismissing these claims.

3. Finally, the Hitches contend that DNR's issuance of the license violated their constitutional due process and equal protection rights. We disagree.

With respect to their due process rights, we note that the Hitches have been afforded a challenge in state court of the agency's action, and they have participated in the federal permitting process associated with the dock planning and construction. Nevertheless, they challenge DNR's denial of a formal hearing as a denial of procedural due process.

> This state has long recognized that the right to be heard in matters affecting one's life, liberty, or property is one of the essential elements of due process of law. However, that right is not absolutely unrestricted. The power of the legislature to create, modify or abolish rights to sue has been clearly and repeatedly recognized both by the U. S. Supreme Court and by this Court. The enactment of a statute delineating or, indeed, even abolishing a cause of action before it has accrued, deprives the plaintiff of no vested right. States are free to create immunities and to eliminate causes of actions, and that legislative determination provides all the process that is due. Thus, due process recognizes a citizen's unfettered right to defend his or her life, liberty, or property in accordance with those limitations constitutionally established by the General Assembly.[22]

With this in mind, it is important to note the limits of the Hitches' due process claim. The Hitches already have been afforded the opportunity to be heard on the merits of their takings claims in

---

[19] 280 Ga. 785 (631 SE2d 374) (2006).

[20] Id. at 786 (1).

[21] To the extent such a dock might comprise a private nuisance or trespass, the Hitches have dismissed those claims against Vasarhelyi from the present action.

[22] (Citations and punctuation omitted.) *Couch v. Parker*, 280 Ga. 580, 582 (1) (630 SE2d 364) (2006).

the trial court and in this Court. The Hitches assert no other property right outside of those asserted in their takings claims. Therefore, in essence, the only due process relief they seek is a formal ALJ hearing — in addition to the public participation process they have already engaged in by providing comments to DNR — on the merits of DNR's licensing decision under the Coastal Marshlands Protection Act. However, that statute provides for a formal hearing process only for certain permitting decisions, and it explicitly states that its provisions do not apply to certain private docks built "exclusively for the noncommercial use of the owner or his or her invitees."[23] Therefore, the General Assembly has determined that challenges to proposed construction of private docks are not within the Act's framework for formal administrative challenges. Accordingly, because no other property right is implicated, this legislative determination has provided the Hitches all the process they are due.[24]

Further, with respect to the Hitches' substantive due process claim, they correctly note that the proper standard for a substantive due process claim is whether the law is rationally related to a legitimate government purpose.[25] In this enumeration the Hitches only challenge DNR's approval of the specific proposed dock design, which results in a "dog leg," rather than a straight walkway. The record shows that DNR approved this design to address a concern by the U. S. Coast Guard that the straight design "may be hazardous to mariners." Therefore, as the changed design specifically addressed the concern for mariner safety — certainly a legitimate government purpose — the Hitches substantive due process argument fails.

The Hitches' equal protection argument fails as well.

> The protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. I, Sec. I, Par. II of the Georgia Constitution of 1983. The doctrine of equal protection is triggered only if similarly situated parties are treated differently. If the parties in question are not so situated, there can be no violation of equal protection.[26]

Here, the parties are those who seek to build private docks and their

---

[23] OCGA § 12-5-295 (7).

[24] See id.

[25] See, e.g., *Fairfax MK, Inc. v. City of Clarkston*, 274 Ga. 520, 523 (4) (555 SE2d 722) (2001).

[26] (Citation and punctuation omitted.) *In the Interest of A. N.*, 281 Ga. 58, 62 (636 SE2d 496) (2006).

neighboring landowners. These parties are not similarly situated; thus there is no violation of equal protection. Further, there is no evidence or allegation that the Hitches have or would be treated differently from Vasarhelyi if the Hitches decided to build a dock. Accordingly, this argument fails.[27]

4. The remaining counts of the Hitches' complaint are essentially arguments in support of the foregoing claims. In light of the holdings herein, the trial court properly dismissed the remainder of the Hitches' complaint.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 16, 2010 — ▮▮▮▮

*Bouhan, Williams & Levy, Walter C. Hartridge*, for appellants.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, Per B. Normark, Assistant Attorneys General, H. Lehman Franklin, Jr.*, for appellees.

---

[27] See *Bell v. Austin*, 278 Ga. 844, 847 (2) (a) (607 SE2d 569) (2005) ("The person who is asserting the equal protection claim has the burden to establish that he is similarly situated to members of the class who are treated differently from him. If the person asserting the violation cannot make the foregoing showing, there is no need to continue with an equal protection analysis.") (citation and punctuation omitted).